Opinion
 

 BENKE, J.
 

 In this case we consider whether the eviction service provided by Landlords Professional Services (LPS) involved the unauthorized practice of law.
 

 I
 

 Facts and Procedural History
 

 In 1982 the Orange County Apartment News carried an advertisement for the eviction services provided by LPS. The ad stated “Evictions as low as $65” and showed the picture of a purposeful and authoritative looking man, arms folded across his chest, stating: “One low price $65 plus costs uncontested or contested in pro per. Attorney for trial extra if needed.” Below the picture were the words “Time to Act!” and “Call & talk to us.” The advertisement ended with an address and telephone number.
 

 In 1982 Roberta Spiegel decided to evict the tenants of an apartment she owned. A friend recommended LPS. Roberta spoke to Bill Watts, an
 
 *1592
 
 employee of LPS, who told her to come to the LPS office and bring all documentation related to the rental. On arrival Roberta was given a booklet with Mr. Watts’s business card attached. The card was imprinted with the words “Landlord’s Professional Services” and the name Bill Watts. Beneath Mr. Watts’s name was the word “Counselor.”
 

 The booklet begins with a chronology of an unlawful detainer action as carried out by the eviction service. The chronology was generally factual. However, at the end of the chronology, this bit of advice is imparted concerning what to do after the tenants have been evicted:
 
 “You must change the locks at that time.
 
 If you do not change the locks you may have a problem. The defendant may re-enter and take possession, and the ball game starts from the beginning.”
 

 The following pages of the booklet contain examples of the types of forms used in an unlawful detainer action and provides a guide for how those forms should be completed. Often the guidance is purely factual, i.e., where a form requires the name of the city in which the subject property is located the guide states “enter city.” The advice given, however, can be more useful. In discussing the “Notice to Pay Rent or Quit,” for example, the guide states: “Acceptance of any money after service may void notice. You don’t have to accept money after notice expires.”
 

 Bill Watts reviewed the normal routine in an unlawful detainer action with Roberta who was unfamiliar with eviction procedures. Roberta asked questions about the procedure and Bill answered them. Roberta told Bill she had already mailed the tenants a three-day notice. Bill told her this was insufficient and she would have to take another notice to the apartment. Bill asked Roberta questions and completed the documents and forms necessary for the unlawful detainer action and eventually filed them.
 

 On December 7, 1982, Ralph Lopes, an investigator with the Orange County District Attorney’s Office, called LPS and stated he was a property owner who was interested in eviction services. Lopes stated he was unfamiliar with the eviction process. The procedure for commencing and carrying through an unlawful detainer action was explained by Jacqueline Sutake, an LPS employee. Sutake explained Lopes would have to send LPS all documentation concerning the rental and they would handle the process. Lopes asked what it meant in the LPS ad when it stated “pro per.” Sutake explained LPS was not an attorney and Lopes would be representing himself. Sutake stated LPS could not represent him in court. If an answer was filed by the tenant, LPS would type up Lopes’s testimony and he could read it in court. Lopes asked if he would need an attorney. Sutake stated if an answer
 
 *1593
 
 is filed by an attorney, LPS recommends its client obtain one as well but that it is possible to prevail without the assistance of counsel.
 

 Lopes asked if he could turn off the utilities at the rental property. Sutake stated he could not. Lopes asked what would occur if he needed an attorney during the process. Sutake stated he could use his own attorney or “we have attorneys here.”
 

 Ms. Sutake testified she did not advise her clients on questions of law. She did, however, explain the unlawful detainer procedure and would share with clients her personal experiences as a landlord. If the case presented was more complex than the routine uncontested unlawful detainer action, she would suggest the client contact an attorney. Ms. Sutake explained her activities were always supervised by an attorney. When an unfamiliar situation arose she would ask an attorney for help and the attorney would determine if the complexity of the case required the services of a lawyer. In most cases her work was reviewed by an attorney before being filed.
 

 In February 1983, the Orange County District Attorney filed a civil complaint against LPS and five other eviction services, alleging the unauthorized practice of law. (Bus. & Prof. Code, §§ 6125, 6126.) The complaint sought monetary penalties pursuant to Business and Professions Code sections 17200 (unfair competition) and 17500 (false or misleading statements) and injunctive relief. At the conclusion of the hearing below the trial court ordered LPS to pay $8,000 in civil penalties for eight violations of Business and Professions Code section 17200 and $9,000 for nine violations of Business and Professions Code section 17500. The finding of eight violations of section 17200 was based on evidence concerning services provided by LPS to seven clients, including Ms. Spiegel, and on the telephone conversation between Ms. Sutake and Investigator Lopes. The finding of nine violations of section 17500 was based on the same evidence with one additional violation based on the advertisement appearing in the Orange County Apartment News.
 

 The trial court also granted the following permanent injunction: “Defendants, their agents, officers, employees and representatives are enjoined from engaging in or performing directly or indirectly any and all of the following acts: “1. The preparation, other than at the specific and detailed direction of a person in propria persona or under the direct supervision of an attorney, of written instruments relating to evictions such as: three day notices, summons and complaints, at issue memoranda, judgments, writs of execution or other legal documents relating to evictions.
 

 “2. Explaining orally or in writing, except under the direct supervision of an attorney, to individual clients: (A) the effect of any rule of law or court;
 
 *1594
 
 (B) advising such persons as to the requirements for commencing or maintaining a proceeding in the Courts of this state; or (C) advising or explaining to such clients the forms which are legally required or how to complete such forms.
 

 “3. Holding themselves out or allowing themselves to be held out to newspapers, magazines, or other advertising, or representing themselves as being able to provide, except through an attorney, any of the following: legal advice, the preparation of legal documents (other than as a secretarial service), or any explanation of any rules of law or court in relation to evictions or as being qualified to do any of the above activities.
 

 “4. Any employee, agent, officer, or representative of L.P.S., not a licensed member of the California Bar, is prohibited from practicing law in any form or holding themselves out as having the right to practice law in any form.”
 

 II
 

 Discussion
 

 LPS argues there was insufficient evidence to support the finding it engaged in the unauthorized practice of law.
 

 A
 

 Business and Professions Code section 6125 states: “No person shall practice law in this State unless he is an active member of the State Bar.” Business and Professions Code section 6126, subdivision (a), provides: “Any person advertising or holding himself or herself out as practicing or entitled to practice law or otherwise practicing law who is not an active member of the State Bar, is guilty of a misdemeanor.”
 

 The code provides no definition for the term “practicing law.” In
 
 Baron
 
 v.
 
 City of Los Angeles
 
 (1970) 2 Cal.3d 535, 542 [86 Cal.Rptr. 673, 469 P.2d 353, 42 A.L.R.3d 1036], our Supreme Court noted that as early as 1922, before the passage of the State Bar Act, it had adopted a definition of “practice of law” used in an Indiana case: “ ‘ “[A]s the term is generally understood, the practice of law is the doing and performing services in a court of justice in any manner depending therein throughout its various stages and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in court.” ’ ” (Quoting
 
 People
 
 v.
 
 *1595
 

 Merchants Protective Corp.
 
 (1922) 189 Cal. 531, 535 [209 P. 363], quoting
 
 Eley
 
 v.
 
 Miller
 
 (1893) 7 Ind.App. 529 [34 N.E. 836];
 
 In re Utz
 
 (1989) 48 Cal.3d 468, 483, fn. 11 [256 Cal.Rptr. 561, 769 P.2d 417]; see also 7 Am.Jur.2d, Attorneys at Law, §§ 101-117.)
 

 While concluding this definition a proper and sufficient one, the court in
 
 Baron,
 
 nonetheless, noted that “ascertaining whether a particular activity falls within this general definition may be a formidable endeavor.”
 
 (Baron
 
 v.
 
 City of Los Angeles, supra,
 
 2 Cal.3d at p. 543; see also
 
 Agran
 
 v.
 
 Shapiro
 
 (1954) 127 Cal.App.2d Supp. 807, 812 [273 P.2d 619].) The
 
 Baron
 
 Court then stated: “In close cases, the courts have determined that the resolution of legal questions for another by advice and action is practicing law ‘if difficult or doubtful legal questions are involved which, to safeguard the public, reasonably demand the application of a trained legal mind.’
 
 ([Agran
 
 v.
 
 Shapiro, supra]
 
 at p. [Supp.] 818 . . . .)” (2 Cal. 3d at p. 543.)
 

 It appears there is no California case dealing with whether eviction services such as those offered by LPS amount to an unauthorized practice of law. Since determining whether any given activity is an unauthorized practice of law depends upon the context and situation involved, it is useful to briefly review similar cases from California and other states.
 

 In
 
 People
 
 v.
 
 Sipper
 
 (1943) 61 Cal.App.2d Supp. 844 [142 P.2d 960] [disapproved on other grounds in
 
 Murgia
 
 v.
 
 Municipal Court
 
 (1975) 15 Cal.3d 286 (124 Cal.Rptr. 204, 540 P.2d 44)], an unauthorized practice of law was found when a real estate broker, not involved in the sale or purchase of property, prepared for a fee a document to secure a loan with real property. The parties who sought the document were inexperienced in such matters and while they explained the nature of the loan, they did not request that any particular instrument securing the loan be prepared. The real estate broker first prepared a trust deed. When the recorder would not accept the deed the broker prepared a mortgage. (61 Cal.App.2d at pp. Supp. 845-846.)
 

 The court concluded the broker had advised the parties concerning the type of document they should prepare to secure the loan and that such advice was an unauthorized practice of law. The court noted if the broker had done nothing more than provide a clerical service and simply filled in blanks on a particular form or had acted as a scrivener and recorded the agreement of the parties, he would not have been engaged in the unauthorized practice of law.
 
 (People
 
 v.
 
 Sipper, supra,
 
 61 Cal.App.2d at pp. Supp. 846-847.)
 

 While the sale of legal forms is not considered an unauthorized practice of law, the question becomes more difficult when detailed instructions for
 
 *1596
 
 filling out the forms are provided or when the forms are accompanied by manuals providing advice for how to proceed with particular legal actions. Some useful insight into whether a given activity is an unauthorized practice of law is provided by other states’ recent experiences with “do-it-yourself’ legal services and manuals. While states disagree on whether the mere sale of such detailed manuals, without more, is the unauthorized practice of law (see 7 Am.Jur.2d, Attorneys at Law, § 102), even those states allowing the sale of such “kits” find an improper practice of law when nonattorneys, using such manuals, particularize the advice given to individual cases.
 

 In
 
 Florida Bar
 
 v.
 
 Brumbaugh
 
 (Fla. 1978) 355 So.2d 1186, the Florida Supreme Court determined the publication of forms and instructions for their use does not constitute the unauthorized practice of law if the instructions are addressed to the public in general rather than to the legal problem of a specific individual.
 
 (Id.
 
 at pp. 1191, 1193.) Brumbaugh, a nonattorney, had advertised a secretarial service offering to perform typing services, for, among others, ’’do-it-yourself’ divorces. Brumbaugh dealt only with uncontested divorces. She first asked her customers whether child custody or support or alimony was involved and then would pick the appropriate forms for the customer. Brumbaugh then completed the forms with the proper information and told the customer how the papers were to be signed, where they were to be filled out and how the customer could arrange for a hearing. Each petition contained the allegation the marriage was irretrievably broken. Brumbaugh also told the parties how many copies of each document had to be filed and what testimony was necessary at the hearing.
 
 (Id.
 
 at pp. 1190-1191.)
 

 The court stated while Brumbaugh did not hold herself out as an attorney, her clients placed some reliance on her to properly prepare the legal forms required. The court held Brumbaugh, and others offering similar services, could sell printed material purporting to explain legal practice and procedure and could sell legal forms. The court further held it was proper for a secretarial service to type forms for its clients, provided the information was copied from information provided the service in writing. Such a service, however, could not advise clients as to the remedies available to them or otherwise assist the client in preparing the required dissolution forms. The service “may not make inquiries nor answer questions from her clients as to the particular forms which might be necessary, how best to fill out such forms, where to properly file such forms, and how to present necessary evidence at the court hearings.” (355 So.2d at p. 1194.)
 

 In
 
 Oregon State Bar
 
 v.
 
 Gilchrist
 
 (1975) 272 Ore. 552 [538 P.2d 913], the Oregon Supreme Court was faced with a claim of unauthorized practice of law by a service that advertised and sold “do-it-yourself” divorce kits. The
 
 *1597
 
 kits contain a packet of forms and a manual explaining how to use them. The service maintained an office and a “typing service” that completed the forms based either on information taken from a questionnaire filled out by the client or from a personal interview. Once the forms were completed, the clients were on their own.
 
 (Id.
 
 at pp. 914-915.)
 

 The Oregon court concluded it was not an unauthorized practice of law to advertise and sell divorce kits as long as the service had no personal contact with the client. In so holding the court cited with approval
 
 New York County Lawyers’ Association
 
 v.
 
 Dacey
 
 (1967) 21 N.Y.2d 694 [287 N.Y.S.2d 422, 234 N.E.2d 459]. That case dealt with the claim the sale of Norman F. Dacey’s book, How to Avoid Probate, was an unauthorized practice of law. The New York court concluded it was not and made these comments pertinent to the present case: “ ‘Dacey’s book is sold to the public at large. There is no personal contact or relationship with a particular individual. Nor does there exist that relation of confidence and trust so necessary to the status of attorney and client. This is the essential of legal practice—the representation and the advising of a particular person in a particular situation. . . .
 

 “ ‘At most the book assumes to offer general advice on common problems, and does not purport to give personal [advice] on a specific problem peculiar to a designated or readily identified person.’ (283 N.Y.S.2d at 997-998.)”
 
 (Oregon State Bar
 
 v.
 
 Gilchrist, supra,
 
 538 P.2d at p. 917.)
 

 The Oregon court, after concluding the selling of divorce kits was not an unauthorized practice of law, then stated: “We further conclude, however, that all personal contact between defendants and their customers in the nature of consultation, explanation, recommendation or advice or other assistance in selecting particular forms, in filling out any part of the forms, or suggesting or advising how the forms should be used in solving the particular customer’s marital problems does constitute the practice of law and must be and is strictly enjoined.”
 
 (Oregon State Bar
 
 v.
 
 Gilchrist, supra,
 
 538 P.2d at p.919.)
 

 In
 
 State Bar
 
 v.
 
 Cramer
 
 (1976) 399 Mich. 116 [249 N.W.2d 1], the Supreme Court of Michigan dealt with whether a “do-it-yourself’ divorce service was engaged in the unauthorized practice of law. The divorce service began with a conference with the client. The client would prepare a questionnaire and the service would use the answers given to prepare the forms for filing with the court. Before the evidentiary hearing the service provided the client with a statement setting forth suggested testimony and suggested
 
 *1598
 
 questions to be asked of a corroborating witness. At all stages of the proceeding the service expressly or inferentially advised clients as to the legal procedures involved.
 
 (Id.
 
 at pp. 2-3.)
 

 The Michigan court, after noting the difficulty of defining “practice of law,” concluded the divorce service was, indeed, practicing law. The court, looking to the opinion in
 
 Gilchrist,
 
 also believed the personal contact between the service and the client was of importance. The court noted that when a service had personal contact with its clients and explained forms and procedures, asked questions and with the answers filled out forms, the relationship developed between the parties was tantamount to that of attorney and client. The court concluded the interests involved in a divorce were considerable and that those persons offering advice concerning divorce must possess a measure of competence and judgment to insure proper representation. The court stated: “Because defendant offers counsel in the form of professional guidance to persons seeking to extricate themselves from a legal relationship, the party represented, as well as the public in general, has a right to be assured that these interests are properly represented by members of the bar. To the extent that defendant provides personal advice peculiar to the dissolution of a specific marriage, she is engaged in the ‘unauthorized practice of law’ . . . .”
 
 (State Bar
 
 v.
 
 Cramer, supra,
 
 249 N.W.2d at p. 9.)
 

 B
 

 The eviction service offered by LPS was designed to assist clients in the preparation, filing and resolution of unlawful detainer actions. LPS, therefore, offered to assist clients in advancing their legal rights in a court of law. We believe general California law and the approach taken by other states with respect to divorce services teach that such services do not amount to the practice of law as long as the service offered by LPS was merely clerical, i.e., the service did not engage in the practice of law if it made forms available for the client’s use, filled the forms in at the specific direction of the client and filed and served those forms as directed by the client. Likewise, merely giving a client a manual, even a detailed one containing specific advice, for the preparation of an unlawful detainer action and the legal incidents of an eviction would not be the practice of law if the service did not personally advise the client with regard to his specific case.
 

 With these principles in mind, we conclude LPS was engaged in the unauthorized practice of law. The advertisement used by LPS implies its eviction services were not limited to clerical functions. The tenor of the advertisement was that the service accomplished evictions. The advertisement’s statement “Call & talk to us” was a general invitation for clients to
 
 *1599
 
 discuss the matter of eviction with LPS. Bill Watts’s LPS business card listed his title as “Counselor.” In short, LPS cast about itself an aura of expertise concerning evictions.
 

 While an eviction may not be the most difficult of procedures, it is, nonetheless, a legal procedure carried out before a court with specific legal requirements for its accomplishment. As we have seen, some courts have held that providing advice as to which forms to use, which blanks to fill in with what information or in which courts an action must be filed is itself the practice of law. Here, of course, LPS’s eviction advice went further. It provided specific information to its clients concerning eviction procedure. This it did in the context of personal interviews where it was able to provide additional information and advice addressed to the specific problems and concerns of its clients. As noted above, Ms. Sutake was prepared to give advice concerning legal matters related to the unlawful detainer action. For example, she told Investigator Lopes that it was unlawful to turn off the utilities at his rental. Indeed Ms. Sutake stated in her declaration she would give clients the benefit of her experience as a landlord. In the context of the service offered by LPS this experience could relate to legal matters. Given the aura of expertise created by the business practices of LPS such advice would undoubtedly be relied upon by its clients, perhaps to their serious detriment.
 

 LPS argues that what it describes as the “larger sense” definition of the practice of law, i.e., the giving of legal advice, is not a viable definition since it potentially applies, for example, to friends who give opinions or advice about each other’s legal problems. While it is true the inherent and necessarily general nature of any definition of legal practice may allow the formulation of hypothetical situations that render the definition unworkable, we need not be concerned with such a reductio ad absurdum argument in this case. Our research has found no case in which one friend was either enjoined from giving legal advice to a friend or prosecuted for the giving of such advice. Moreover, the hypothetical situation is not before us. As we have noted any definition of legal practice is, given the complexity and variability of the subject, incapable of universal application and can provide only a general guide to whether a particular act or activity is the practice of law. To restrict or limit the test in the interest of specificity would also limit its applicability to situations in which the public requires protection. Finally, we do not consider the present case a close one which strains the test or pushes it to an unacceptable application.
 

 LPS also argues it is doing nothing more than court clerks do in providing forms and advice to those individuals who pick up from the courts probate or small claims forms. First, we find no evidence in the record that
 
 *1600
 
 court clerks are providing a service such as that provided by LPS. Moreover, even if we assume some clerks at some time have overstepped the bounds of their office and have practiced law the assumption provides no defense for LPS.
 

 The judgment is affirmed.
 

 Work, Acting P. J., and Todd, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied March 1, 1990.