In re Jayson REYNOSO, Debtor.

Frankfort Digital Services, Ltd.;
Henry Ihejirika, Appellants,

v.

William T. Neary, United States
Trustee, Appellee.

BAP No. NC–03–1262–BSP.
Bankruptcy No. 02–41108–NT.
Adversary No. 02–07197–AN.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on July 23, 2004.

Filed Sept. 20, 2004.

M. Jonathan Hayes, Woodland Hills, CA, for Frankfort Digital Services, Ltd. and Henry Ihejirika.

Minnie Loo, Oakland, CA, for William T. Neary, United States Trustee.

Before BRANDT, SMITH, and PERRIS, Bankruptcy Judges.

## AMENDED OPINION[1]

BRANDT, Bankruptcy Judge.

Appellants Henry Ihejirika and Frankfort Digital Services sold licenses over the Internet for software which generated completed bankruptcy petitions, schedules, and statements of financial affairs from information users entered into dialog boxes on appellants' websites. After trial on a complaint brought by the United States Trustee ("UST"), the bankruptcy court held that appellants were bankruptcy petition preparers ("BPPs") within the definition of § 110(a)(1),[2] had engaged in the unauthorized practice of law, and in fraudulent, unfair, or deceptive conduct. The court ordered appellants to pay fines and disgorge fees, enjoined them from acting as BPPs or otherwise assisting in the preparation of documents to be filed in a bankruptcy case, and certified the facts to the district court for entry of an order for damages pursuant to § 110(i). This appeal followed. We AFFIRM.

1. This amended opinion supersedes the opinion filed 25 August 2004. The only substantive changes are in Part A of the discussion.

## I. FACTS

Pro se debtor Jayson Reynoso used the Internet websites "700law.com" and "Ziinet.com" to prepare his bankruptcy petition and schedules. Those sites (which counsel advises have been closed down) were operated by appellant Ihejirika doing business as Frankfort Digital Services, Ltd. Neither appellant is an attorney. The websites allowed the user to purchase a license to access bankruptcy document preparation software, and made the following representations:

- "KEEP BK OFF YOUR CREDIT"
- "KEEP EVERYTHING EVEN 4 OR 5 CARS"
- "File bankruptcy and keep it out of your credit report!"
- "Ziinet is an expert system and knows the law. Unlike most bankruptcy programs which are little more than customized word processors the Ziinet engine is an *expert system*. It knows bankruptcy laws right down to those applicable to the state in which you live. Now you no longer need to spend weeks studying bankruptcy laws."
- "Ziinet simplifies the process by automating most tasks. For example, you can have it automatically select bankruptcy exemptions for you."
- "Ziinet eliminates the need to choose which schedule to use for each piece of information. You just enter the information and *Ziinet automatically figures where to put the data.*"

Findings of Fact Nos. 4, 6, and 7.

On 30 January 2002, Reynoso received an e-mail from "fdsauto@hotmail.com" in-

2. Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All Rule references are to the Federal Rules of Bankruptcy Procedure.

viting him to access "The Vault," purportedly containing "bankruptcy secrets" such as how to keep a bankruptcy off a credit report, and how to protect "more than your fair share of assets." Reynoso opted not to utilize this option because he thought it would be more confusing, and he felt "it wasn't right to do things like that." Transcript, 7 April 2003, 21:1–4.

The Ziinet software prompts the user via dialog boxes for information as to personal identification, assets, debts, income, etc. Once the user submits answers, the software produces a set of completed bankruptcy forms with instructions on how to print them.

Reynoso paid $219 for the license and used the software to prepare his schedules. No BPP was identified in his petition, schedules, or statement of financial affairs, nor did the documents disclose the fee he had paid for using the software. Reynoso testified that the software prompted him to answer questions regarding whether he wanted to keep certain assets. Depending on the response, the software would bring up a drop-down list of exemption statutes for the user to choose from. Although Reynoso testified that he independently researched some of the exemptions, he did not type the references to exemption statutes into the schedules.

Reynoso filed his petition, schedules, and statements on 28 February 2002. Those schedules initially listed neither household goods nor wearing apparel, because the software instructions led him to believe he was not required to list those assets. He later amended his schedules at the trustee's request.

In response to question no. 9 ("Payments related to debt counseling or bankruptcy"), the software automatically inserted this statement into Reynoso's (and two other testifying debtors') statement of financial affairs:

Realizing that this document is signed under penalty of perjury, I declare that I prepared my own bankruptcy by myself using a computer and that I was not assisted by an attorney, paralegal or bankruptcy preparer. I downloaded the software into my computer's browser as a web page, typed in my bankruptcy information and printed my bankruptcy documents on my printer in the privacy of my home without any human intervention other than mine. The software printed the official Federal bankruptcy forms with the information I typed in within a few seconds of my pressing the print button and no one other than myself inputted, edited or reviewed my bankruptcy information or handled my bankruptcy documents at any point in the process. The contents of my documents are based entirely on my own research and no one gave me legal advice or told me to include or omit any information from my documents.

Finding of Fact No. 19.

The UST brought an action in Reynoso's case against appellants and others for § 110 violations, seeking fines, disgorgement, a permanent injunction, and certification to the district court for imposition of sanctions, fees, and costs.

At trial, counsel discussed stipulating to many of the proposed findings, but there is no clear stipulation in the record. Transcript, 7 April 2004, 13:21–24. In addition to Reynoso's testimony, three other debtors who had used appellants' websites testified, and statements of several other debtors who had filed in the district, along with their bankruptcy petitions and schedules were admitted without objection. That evidence showed that those debtors' experience with appellants' websites was similar to Reynoso's, and that neither appellants' involvement in the document

preparation nor the fees charged were disclosed in the documents. In all cases, fees charged for use of the software were in excess of the $125 authorized under the Northern District of California's Bankruptcy Petition Preparer Guidelines ("BPP Guidelines").

The bankruptcy court ruled that similar decisions against appellants in other districts precluded ("collaterally estopped") them from arguing that they were not BPPs and that they had not engaged in the unauthorized practice of law. The court also found that in any event they were BPPs engaging in the unauthorized practice of law; that they had intentionally concealed their involvement as BPPs and engaged in fraudulent, unfair and deceptive conduct; and that they had continually and intentionally violated § 110 in each case. Accordingly, the court assessed fines, ordered disgorgement of all fees received from Northern District of California debtors in the previous 12 months; and permanently enjoined appellants from acting as BPPs and related activities. Finally, the court certified the facts to the district court for determination of damages under § 110(i).

This appeal ensued.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(A), and we do under 28 U.S.C. § 158(c).

## III. ISSUES

A. Whether the bankruptcy court erred in concluding that appellants were precluded from relitigating the issues of whether they are BPPs and whether they engaged in the unauthorized practice of law.

B. Whether the bankruptcy court erred in determining that appellants are BPPs.

C. Whether the bankruptcy court erred in determining that appellants engaged in the unauthorized practice of law.

D. Whether the bankruptcy court clearly erred in finding that appellants engaged in fraudulent, unfair, or deceptive conduct.

E. Whether the bankruptcy court erred in ordering disgorgement of all fees paid to appellants.

F. Whether the bankruptcy court abused its discretion in permanently enjoining appellants from acting as BPPs.

G. Whether the bankruptcy court erred in certification to the district court for assessment of damages and fees under § 110(i).

## IV. STANDARDS OF REVIEW

■ Whether issue preclusion applies is a mixed question of law and fact, which we review de novo. *In re Molina,* 228 B.R. 248, 250 (9th Cir. BAP 1998) (*citing In re Nourbakhsh,* 67 F.3d 798 (9th Cir.1995)).

■ We review the bankruptcy court's findings of fact for clear error; its conclusions of law de novo. *In re Tsurukawa,* 287 B.R. 515, 520 (9th Cir. BAP 2002). A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been committed. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). If two views of the evidence are possible, the trial judge's choice between them cannot be clearly erroneous. *Id.* at 574, 105 S.Ct. 1504.

■ We review the bankruptcy court's decision to impose a permanent injunction for abuse of discretion, and its

underlying factual and legal determinations by the pertinent standards. *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 826 (9th Cir.2001). A bankruptcy court's decision regarding fines under § 110 is also reviewed for abuse of discretion. *In re Doser*, 292 B.R. 652, 661 (D.Idaho 2003).

■■ A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). "Under the abuse of discretion standard, [we] must have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached before reversal is proper." *In re Black*, 222 B.R. 896, 899 (9th Cir. BAP 1998).

■ We have held that the standard of review for violations of § 110 is abuse of discretion as to fact finding. *In re Fraga*, 210 B.R. 812, 816 (9th Cir. BAP 1997) (*citing Interpreting 11 U.S.C. § 110 Which Governs Conduct of Non–Lawyer Bankruptcy Petition Preparers and Delineating the Relationship, Powers and Functions of the Bankruptcy Court and the District Court Under the Statute*, 198 B.R. 604, 610 (C.D.Cal.1996)). More precisely, the standard of review for the pertinent factual findings is clear error, Rule 8013, while that for review of the imposition of discretionary penalties for violations of § 110 is abuse of discretion.

## V. DISCUSSION

As a threshold matter, appellants argue that the bankruptcy court's findings of fact are a mass adoption of the UST's suggestions, and thus should be specially scrutinized on appeal. *L.K. Comstock & Co., Inc. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 222 (9th Cir.1989) (adopted

findings are subject to more careful scrutiny on appeal). They complain that several of the findings are not supported by evidence. Specifically, appellants take issue with Findings Nos. 32, 33, 120–29, 179–96 and "virtually all the findings from No. 197 on." They argue, without elaboration, that these findings include information regarding people who did not testify at trial and other findings that were not discussed at trial.

This argument is belied by the bankruptcy court's comment at the conclusion of trial: "I'm prepared to sign off on the U.S. Trustee's proposed findings, *[of] which I have reviewed each line and phrase*, and it appears ... that those facts are as they've been stated. The documents are all here...." Transcript, 67:8–12 (emphasis added). As noted, there was, apparently, a stipulation to many of the UST's proposed findings, and numerous bankruptcy documents filed by debtors other than Reynoso were admitted into evidence without objection.

We need not address the findings now challenged. Appellants have not shown how, in light of the testimony and other evidence admitted at trial, the findings complained of were either clearly erroneous or essential to the court's ruling. To the extent there was any error, it was harmless. *See In re Maximus Computers, Inc.*, 278 B.R. 189, 194 (9th Cir. BAP 2002).

### A. *Issue Preclusion*

The bankruptcy court concluded that appellants were collaterally estopped from arguing that they are not BPPs and that they were not engaged in the unauthorized practice of law. On appeal, appellants have not addressed this issue, and have therefore waived it. *See In re Branam*, 226 B.R. 45, 55 (9th Cir. BAP 1998) *aff'd,*

table, 205 F.3d 1350 (9th Cir.1999). In any event, the bankruptcy court did not err.

Preliminarily, we note that the terminology regarding the preclusive effects of former litigation has changed. What was formerly referred to as "collateral estoppel" is, in the newer terminology, "issue preclusion." Issue preclusion includes doctrines of direct and collateral estoppel, "both of which foreclose relitigation of matters that have been actually litigated." *In re Associated Vintage Group, Inc.*, 283 B.R. 549, 554–55 (9th Cir. BAP 2002).

 To determine whether issue preclusion applies to a decision from a federal court on a federal question, we look to the federal law of issue preclusion. *In re Berr*, 172 B.R. 299, 305–306 (9th Cir. BAP 1994); *In re Antonakis*, 207 B.R. 201, 204 (Bankr.E.D.Cal.1997). Under federal law:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320–21 (9th Cir.1992).

 Decisions similar to the one at hand have been rendered against appellants in the bankruptcy courts of the Eastern District of Pennsylvania, the Western District of Tennessee, the Southern District of Iowa, the District of Minnesota, and the Central District of California; in the latter case the bankruptcy court concluded, on nearly identical material facts, that "Henry Ihejirika, Ziinet.com, and Frankfort Digital Services, Ltd. are bankruptcy petition preparers, as that term is defined under 11 U.S.C. § 110(a)(1)[,]" and that those parties "engaged in the unau-

thorized practice of law." *In re Pillot*, 286 B.R. 157, 162 (Bankr.C.D.Cal.2002).

The elements of issue preclusion are met here. The issues litigated in *Pillot* are identical: whether appellants are BPPs and whether they engaged in the unauthorized practice of law. The issues were actually litigated, and their determination was essential to the final judgments. The bankruptcy court correctly concluded that appellants were precluded from arguing that they are not BPPs and that they did not engage in the unauthorized practice of law.

At oral argument, appellants' counsel contended that *Pillot* was inapplicable because "The Vault" had been eliminated from the website. However, the evidence is that "The Vault" was available through the websites at the time Reynoso used the software. Moreover, the court in *Pillot* found that certain features outside "The Vault," such as the automatic selection of exemptions, also constituted the unauthorized practice of law.

## B. *Are Appellants BPPs?*

 The Code defines "bankruptcy petition preparer" as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing[.]" § 110(a)(1). "Document for filing" is defined as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." § 110(a)(2).

Appellants argue that they are not BPPs because they did not prepare any documents for the debtors to file. Their argument is that they merely own websites which allow access to software which enables the users to fill out the forms themselves. The bankruptcy court properly rejected this argument:

[W]ebsites don't just grow out of thin air and aren't maintained out of thin air. They're put together by people; they're put on the Internet; and it's not the website that provides the assistance. It's the people who develop the website that provide the assistance....

Transcript, 44:3–8. The software did not simply place the debtors' answers, unedited and unmediated, into official forms where the debtors had typed them on a screen; rather, it took debtors' responses to questions, restated them, and determined where to place the revised text into official forms.

Appellants further contend that their service is no different than commercially-available tax preparation software such as Turbo Tax. We agree with the bankruptcy court: perhaps true, but irrelevant. The relevant question, not addressed by appellants, is whether Congress could regulate providers of tax document preparation software or Internet access to it.

The plain language of § 110(a) supports the bankruptcy court's finding that appellants are BPPs—they (through their websites) transformed raw information into completed bankruptcy forms for filing in the court, and charged fees for this service. There is no significant difference between what appellants did and the more familiar law office (or BPP) practice of obtaining information from clients on input forms and recasting that data into the appropriate forms or pleadings for filing. That appellants did so electronically, at a distance, and by programming software, does not change the nature of their operation; their arguments to the contrary are unconvincing. *See In re Jolly,* 313 B.R. 295, 300 (Bankr.S.D.Iowa 2004) (the fact that a person provides computerized bankruptcy preparation services and does not place data directly on forms does not excuse that person's failure to reveal that

role in the preparation of documents for filing).

Even if issue preclusion did not apply, the bankruptcy court did not err in finding appellants are BPPs under the present facts.

### C. *Unauthorized Practice of Law*

 Appellants further argue that they did not engage in the unauthorized practice of law. Under California law, the practice of law "includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be pending in a court." *In re Agyekum,* 225 B.R. 695, 701 (9th Cir. BAP 1998) (citation omitted); *People v. Sipper,* 61 Cal.App.2d Supp. 844, 846, 142 P.2d 960, 962 (1943), *overruled on other grounds, Murgia v. Municipal Court,* 15 Cal.3d 286, 540 P.2d 44, 124 Cal.Rptr. 204 (1975). Solicitation of information which is then translated into completed bankruptcy forms is the unauthorized practice of law, whether by website or otherwise, as is advising a debtor of the availability of particular exemptions or choosing those exemptions. *See Agyekum* 225 B.R. at 702; *In re Glad,* 98 B.R. 976, 978 (9th Cir. BAP 1989); *In re Kaitangian,* 218 B.R. 102, 110 (Bankr.S.D.Cal.1998). *See also In re Bankruptcy Petition Preparers Who Are Not Certified Pursuant to Requirements of the Arizona Supreme Court,* 307 B.R. 134, 141–42 (9th Cir. BAP 2004).

Appellants do not dispute that their software solicits information from users, that it directs them to the applicable sections of the California Code of Civil Procedure for exemptions, and that it transforms the raw data into completed forms. The bankruptcy court did not err in concluding that appellants engaged in the unauthorized practice of law.

## D. *Fraudulent, Unfair, or Deceptive Conduct*

Appellants admit they did not sign the petitions or provide an identifying number as required under § 110(b) and (c), or file declarations as to fees as required under § 110(h). The bankruptcy court correctly concluded that they had made false statements to the court and intentionally concealed their involvement as BPPs, which is fraudulent, unfair, and deceptive conduct. *See Kaitangian*, 218 B.R. at 117 (BPP's failure to disclose all fees constitutes an unfair and deceptive act).

Moreover, engaging in the unauthorized practice of law, automatically inserting text into the statement of financial affairs, and their websites' representations that debtors could keep bankruptcy off their credit reports, retain vehicles, etc., is fraudulent, unfair, and deceptive conduct. *See In re Bush*, 275 B.R. 69, 83 (Bankr.D.Idaho 2002); *In re Stacy*, 193 B.R. 31, 37 (Bankr.D.Or.1996).

The bankruptcy court's finding to that effect was not clearly erroneous.

## E. *Disgorgement*

Appellants argue that disgorgement was improper because there was no evidence presented that the amounts charged were excessive. Section 110(h) requires the bankruptcy court to disallow and order turnover to the trustee of any fee charged that is in excess of the value of services rendered. Appellants have not challenged, much less shown clearly erroneous, the bankruptcy court's finding that the value of the services provided by appellants was negligible. It was not an abuse of discretion to predicate an order of disgorgement on this finding.

As the factual finding is sufficient, and appellants do not challenge its propriety, we need not consider the bankruptcy court's BPP Guidelines.

## F. *Injunction*

Section 110(j)(2) authorizes the bankruptcy court to enjoin a BPP if it finds the BPP

(A)(i) ... has—

(I) engaged in conduct in violation of [§ 110] or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct[.] ...

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

Appellants argue that the permanent injunction was improper because they were not violating the law. First, they argue that they are not BPPs, and next, even if they are, the UST did not present evidence that they misrepresented their experience or education or that they engaged in any fraudulent, unfair or deceptive conduct, nor that they engaged in the unauthorized practice of law. But in light of its findings to the contrary and appellants' history of § 110 violations, established in other districts, the bankruptcy court did not abuse

its discretion in permanently enjoining them.

### G. *Certification*

Appellants argue certification to the district court was improper because they did not violate the law. Again, appellants have not shown the bankruptcy court's findings to the contrary were in error.

■ Certification is mandatory: once the bankruptcy court finds a BPP has engaged in fraudulent, unfair, or deceptive conduct, the bankruptcy court must (upon motion) certify that fact to the district court for the imposition of damages. § 110(i)(1).

## VI. CONCLUSION

Appellants have not shown that the bankruptcy court erred in concluding that they were precluded from arguing that they were not BPPs engaged in the unauthorized practice of law. In any event, the evidence supported those conclusions and the conclusion that they had engaged in fraudulent, unfair, and deceptive conduct. Accordingly, imposing damages, ordering disgorgement, enjoining appellants, and certifying those facts to the district court was not error.

We AFFIRM.