# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: JAYSON REYNOSO,

*Debtor,*

FRANKFORT DIGITAL SERVICES, LTD.;
HENRY IHEJIRIKA,

*Appellants,*

v.

SARA L. KISTLER*, United States
Trustee,

*Appellee,*

and

EXECUTIVE OFFICE OF UNITED
STATES TRUSTEE,

*Trustee.*

No. 04-17190

BAP No.
NC-03-01262-BSP

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Perris, Smith, and Brandt, Bankruptcy Judges, Presiding

Argued and Submitted
September 14, 2006—San Francisco, California

Filed February 27, 2007

Before: Betty B. Fletcher and Marsha S. Berzon, Circuit
Judges, and David G. Trager**, District Judge.

*Sara L. Kistler is substituted for her predecessor as United States
Trustee. Fed. R. App. P. 43(c)(2).

** The Honorable David G. Trager, Senior District Court Judge for the
Eastern District of New York, sitting by designation.

2189

Opinion by Judge B. Fletcher

**COUNSEL**

M. Jonathan Hayes, Woodland Hills, California, for the defendants-appellants.

Catherine Y. Hancock (argued) and I. Glenn Cohen, Appellate Staff, U.S. Dept. of Justice Civil Division, Washington, D.C., for the plaintiff-appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

This appeal arises from an adversary proceeding initiated by the United States Trustee ("Trustee"), during the bank-

ruptcy proceeding of Debtor Jayson Reynoso, against Henry Ihejirika, d/b/a Frankfort Digital Services, Ltd. and Ziinet.com (collectively, "Frankfort").

The United States Bankruptcy Court for the Northern District of California found that Frankfort, a seller of web-based software that prepares bankruptcy petitions, acted as a "bankruptcy petition preparer" within the meaning of 11 U.S.C. § 110 (2002)[1] and violated the requirements thereof. The bankruptcy court concluded that Frankfort had committed fraudulent, unfair, or deceptive conduct, and had engaged in the unauthorized practice of law.

The Bankruptcy Court's decision, including the relief granted, was affirmed by the Bankruptcy Appellate Panel ("BAP") of the Ninth Circuit. *Frankfort Digital Servs., Ltd. v. Neary* (*In re Reynoso*), 315 B.R. 544 (9th Cir. BAP 2004) (amended op.). The case now comes before this court on appeal. We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we independently review the bankruptcy court's decision —reviewing any conclusions of law *de novo*, while reviewing findings of fact for clear error. *See Burnett v. Resurgent Capital Servs.* (*In re Burnett*), 435 F.3d 971, 975 (9th Cir. 2006); *Scott v. U.S. Trustee* (*In re Doser*), 412 F.3d 1056, 1061 (9th Cir. 2005).

I.

During the relevant time period, Frankfort did business under a variety of names including Ziinet.com and 700law.com. The company is owned and operated by Henry Ihejirika. Ihejirika is not an attorney.

---

[1]This case arose prior to the enactment and effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23, and BAPCPA's amendments to the Bankruptcy Code are not relevant to the issues before us. Accordingly, all references herein are to the pre-BAPCPA Code in effect in October 2002 when the adversary proceeding against Frankfort was filed.

Frankfort sold access to websites where customers could access browser-based software for preparing bankruptcy petitions and schedules, as well as informational guides promising advice on various aspects of relevant bankruptcy law.

On January 30, 2002, debtor Jayson Reynoso accessed one of Frankfort's web sites—the "Ziinet Bankruptcy Engine." The site represented to potential customers, like Reynoso, that its software system offered expertise in bankruptcy law:

> Ziinet is an expert system and knows the law. Unlike most bankruptcy programs which are little more than customized word processors the Ziinet engine is an *expert system*. It knows bankruptcy laws right down to those applicable to the state in which you live. Now you no longer need to spend weeks studying bankruptcy laws.

It explained that its program would select bankruptcy exemptions for the debtor and would eliminate the debtor's "need to choose which schedule to use for each piece of information."

The site also offered customers access to the "Bankruptcy Vault"—a repository of information regarding "loopholes" and "stealth techniques." For example, according to the site, the Vault would explain how to hide a bankruptcy from credit bureaus and how to retain various types of property.

Reynoso paid $219 for a license to access the Ziinet Engine, including the Vault, for 60 days. The online software prompted Reynoso to enter his personal information, debts, income, assets, and other data into dialog boxes. The program then used the data to generate a complete set of bankruptcy forms.

As promised by the site, the software selected particular schedules and exemptions for Reynoso. For example, Reynoso's Schedule C ("Property Claimed as Exempt") specified

that he claimed an exemption under § 703.140(B)(5) of the California Code of Civil Procedure. However, Reynoso testified that he did not type in this section number, and the bankruptcy court found that Reynoso "did not choose the exemptions that showed up on this schedule."

Where the bankruptcy forms provided a space for the signature and social security number of any non-attorney petition preparer, the software generated the response: "Not Applicable." Question #9 on the Statement of Financial Affairs required the debtor to "[l]ist all payments made [by] . . . debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case." The software generated the following response:

> Realizing that this document is signed under penalty of perjury, I declare that I prepared my own bankruptcy by myself using a computer and that I was not assisted by an attorney, paralegal or bankruptcy preparer. I downloaded the software into my computer's browser as a web page, typed in my bankruptcy information and printed my bankruptcy documents on my printer in the privacy of my home without any human intervention other than mine. The software printed the official Federal bankruptcy forms with the information I typed in within a few seconds of my pressing the print button and no one other than myself inputted, edited or reviewed my bankruptcy information or handled my bankruptcy documents at any point in the process. The contents of my documents are based entirely on my own research and no one gave me legal advice or told me to include or omit any information from my documents.

The paragraph makes no mention of the fee that Reynoso paid to access Frankfort's software.

Reynoso printed the forms and filed his chapter 7 bankruptcy petition on February 28, 2002. During the first meeting with creditors, the chapter 7 trustee noticed errors in the petition and, upon questioning Reynoso, learned that he had paid for the assistance of an "online bankruptcy engine." Following further investigation, the Trustee commenced the instant adversary proceeding against Frankfort in October 2002. This was one of numerous adversary proceedings against Frankfort for violations of 11 U.S.C. § 110.[2]

On April 11, 2003, the bankruptcy court held that Frankfort was collaterally estopped from challenging its status as a bankruptcy petition preparer engaged in the unauthorized practice of law. Alternatively, the court considered the merits and found that Frankfort qualified as a bankruptcy petition preparer, had violated the requirements placed on such preparers by § 110, had committed fraudulent, unfair, or deceptive conduct, and had engaged in the unauthorized practice of law. The court found that Frankfort committed a total of nine violations of 11 U.S.C. § 110(b), (c), and (f) in "each bankruptcy case filed by a Northern District of California debtor who was [Frankfort's] customer" and assessed fines accordingly. The court also ordered disgorgement of the entire fee received from any debtor-customer in the Northern District of California in the preceding twelve months, and permanently enjoined Frankfort from acting as a bankruptcy petition preparer in the Northern District of California. Finally, the court certified the fact of Frankfort's fraudulent, unfair or deceptive conduct to the district court for a determination of damages under 11 U.S.C. § 110(i).

---

[2]Other cases include *In re Pillot*, 286 B.R. 157 (Bankr. C.D. Cal. 2002); *In re Briand*, 02-21922 (Bankr. E.D. Pa. 2002); *Vergos v. ZiiNet.com* (*In re Liljeblad*), 02-5377 (Bankr. W.D. Tenn. 2002); *In re Tyler*, 02-00889 (Bankr. S.D. Iowa 2003); *In re Renaud*, 02-04923 (Bankr. S.D. Iowa 2003); and *Fokkena v. Ziinet.com* (*In re Shugart*), 02-33427 (Bankr. D. Minn. 2003). With the exception of *Pillot*, Frankfort failed to appear to defend itself in these cases, resulting in default judgments.

## II.

In *In re Pillot*, 286 B.R. 157 (Bankr. C.D. Cal. 2002), the bankruptcy court for the Central District of California held that Frankfort, with its Ziinet Engine, was a bankruptcy petition preparer. *Id.* at 162. In addition, Frankfort admitted, and the court found, that it had engaged in the unauthorized practice of law. *Id.* at 160-62.

In the instant case, the bankruptcy court found that the doctrine of issue preclusion barred Frankfort from challenging these conclusions, and the BAP agreed. *Reynoso*, 315 B.R. at 550-51.

**[1]** Issue preclusion, or collateral estoppel, refers to "the preclusive effect of a judgment in foreclosing relitigation of issues that have been actually and necessarily decided in earlier litigation." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 n.4 (9th Cir. 2000). Issue preclusion bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met:

> (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated;
>
> (2) the first proceeding ended with a final judgment on the merits; and
>
> (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding.

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006); *see Berr v. Fed. Deposit Ins. Corp.* (*In re Berr*), 172 B.R. 299, 305-06 (9th Cir. BAP 1994). Frankfort does not dispute that it was a party to the action in *Pillot* and that the disposition there was a final judgment on the merits.

The sole question is whether the issues decided in *Pillot* are identical to those appealed here.

Frankfort argues that the website accessed by Pillot differed substantially from the website accessed by subsequent customers, such as Reynoso, because the Vault and other information "relating to bankruptcy in general" had been removed.[3] The record, however, indicates that the Vault was advertised to Reynoso, and the district court found that he, like Pillot, accessed it. The evidence also shows that the process of using Frankfort's software and its output were the same as between Reynoso and Pillot. *Cf. Pillot*, 286 B.R. at 159.

**[2]** Although there is substantial support for a finding of issue preclusion, we note that the record does not include a complete print-out of the website as accessed by Pillot that can be compared with the website as accessed by Reynoso. Because there remains some possibility that, as Frankfort contends, the website changed significantly after Pillot accessed it, we decline to hold that issue preclusion applies and instead affirm the bankruptcy court's and BAP's decisions on the grounds discussed *infra*. *Cf. Berr*, 172 B.R. at 306 (noting that "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against giving it collateral estoppel effect").

## III.

### A.

**[3]** Pursuant to 11 U.S.C. § 110(a)(1), a bankruptcy petition preparer is "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1).[4]

---

[3]Frankfort does not specify when this occurred but indicates that it was sometime after October 2001 but "long before" October 2002.

[4]A document for filing is "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." 11 U.S.C. § 110(a)(2).

**[4]** Frankfort argues that the creation and ownership of a software program used by a licensee to prepare his or her bankruptcy forms is not preparation of a document for filing under the statute. Whether a software-provider may qualify as a bankruptcy petition preparer under 11 U.S.C. § 110(a)(1) is a question of first impression in the Ninth Circuit. We hold that the software at issue in this case qualifies as such.

Frankfort charged fees to permit customers to access web-based software. Frankfort's software solicited information from the customers. Critically, it then translated that information into responses to questions on the bankruptcy forms, and prepared the bankruptcy forms for filing using those responses. As the BAP noted, "The software did not simply place the debtors' answers, unedited and unmediated, into official forms where the debtors had typed them on a screen; rather, it took debtors' responses to questions, restated them, and determined where to place the revised text into official forms.' " *Reynoso*, 315 B.R. at 552.

**[5]** In sum, for a fee, Frankfort provided customers with completed bankruptcy petitions. Customers merely provided the data requested by the software and printed the finished forms. This is materially indistinguishable from other cases in which individuals or corporations[5] have been deemed bankruptcy petition preparers. *See, e.g.*, *Doser*, 412 F.3d at 1059-60. It goes without saying that the customer must provide data to the preparer, and the customer's role in printing or otherwise reproducing the forms before filing does not alter the role of the preparer. Moreover, § 110 does not require that bankruptcy petition preparers have in-person interactions with

---

[5]The term "person" in the Bankruptcy Code includes corporations. *See* 11 U.S.C. § 101(41) (" '[P]erson' includes individual, partnership, and corporation . . . . ."); *see also Consumer Seven Corp. v. U.S. Trustee* (*In re Fraga*), 210 B.R. 812, 817 (9th Cir. BAP 1997) (holding that a corporation engaged in the preparation of bankruptcy petitions is not exempt from the definition of a bankruptcy petition preparer even though it is solely owned and operated by an attorney).

their customers. *Cf. Ferm v. U.S. Trustee (In re Crowe)*, 243 B.R. 43, 49-50 (9th Cir. BAP 2000) (holding that the author of an instructional book on bankruptcy petitions who guaranteed buyers of the book that he would complete their forms for free if they were unable to do so themselves was, in fact, presenting himself as a bankruptcy petition preparer as defined by § 110(a)(1)), *aff'd*, 246 F.3d 673 (9th Cir. 2000) (unpublished table decision); *In re Doser*, 281 B.R. 292, 303-04 (Bankr. D. Idaho 2002) (reasoning that a franchisor who receives information that was solicited in a face-to-face interaction between the franchisee and the customer and uses that information to prepare bankruptcy documents, but never meets with the customer directly, is a bankruptcy petition preparer), *aff'd*, 412 F.3d 1056. The bankruptcy court and BAP did not err in concluding that Frankfort was a bankruptcy petition preparer.

## B.

Having affirmed the determination that Frankfort was a bankruptcy petition preparer under 11 U.S.C. § 110, we now consider the propriety of the fines and other sanctions imposed by the bankruptcy court under the statute.

[6] First, we find that the fines imposed for violations of 11 U.S.C. § 110(b), (c), and (f) were proper. Evidence of record shows that bankruptcy petitions prepared by Frankfort did not include the signature, name, address, or social security of the preparer as required by § 110(b) and (c). Print-outs of the website accessed by Reynoso also show that the words "law" or "legal" were used in violation of § 110(f). Thus, the bankruptcy court did not err in imposing fines under these subsections.

[7] Second, we reject Frankfort's contention that the bankruptcy court's holdings under § 110(i) and (h) were erroneous. Section 110(i) permits a bankruptcy court, upon a finding that a bankruptcy petition preparer has engaged in a fraudulent,

unfair, or deceptive act, to certify that fact to the district court for a determination of damages. Section 110(j)(2)(B) authorizes a bankruptcy court to enjoin a person from acting as a bankruptcy petition preparer upon a finding that she has continually engaged in, *inter alia*, violations of § 110 or any other fraudulent, unfair, or deceptive conduct.

[8] The bankruptcy court found that Frankfort made false statements to the court and intentionally concealed its role as a preparer. *Reynoso*, 315 B.R. at 553. Notably, the court found that Frankfort repeatedly and intentionally failed to disclose its identity as a bankruptcy petition preparer on the filings it prepared and failed to disclose the compensation it received for preparing the petitions as required by § 110(h). The bankruptcy court and BAP deemed these ongoing acts, as well as various representations by Frankfort (such as Frankfort's claim that it could show debtors how to "[f]ile bankruptcy and keep it off your credit report!" or to "keep 3, 4, or even 5 cars"), deceptive. *Id.*; *cf. In re Kaitangian*, 218 B.R. 102, 117 (Bankr. S.D. Cal. 1998) (holding that a bankruptcy petition preparer's failure to disclose all fees constituted an unfair and deceptive act). We conclude that this finding was supported by sufficient evidence and was proper. Correspondingly, we affirm the bankruptcy court's certification to the district court and issuance of an injunction.[6]

---

[6]Frankfort also seeks to challenge the bankruptcy court's order of accounting and disgorgement of excessive fees. The court found that the value of Frankfort's services was negligible, and therefore ordered disgorgement "to each Northern District of California debtor who was Defendants' customer all fees received." Frankfort did not challenge the bankruptcy court's finding that its services were—in essence—valueless, when it appealed to the BAP, *Reynoso*, 315 B.R. at 553, or to this court. Frankfort has therefore waived its opportunity to do so, and we have no basis on which to reconsider the court's factual finding.

IV.

**[9]** Since "bankruptcy petition preparers" are—by definition—not attorneys, they are prohibited from practicing law. *Cf., e.g.*, *In re Bernales*, 345 B.R. 206, 216 (Bankr. C.D. Cal. 2006) ("The law is clear: '[T]he services of bankruptcy petition preparers are strictly limited to typing bankruptcy forms.' " (quoting *Kaitangian*, 218 B.R. at 113)); H.R. Rep. No. 103-835, at 56 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3365 ("While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors.").

**[10]** We look to state law for guidance in determining whether Frankfort has engaged in the unauthorized practice of law. *See Taub v. Weber*, 366 F.3d 966, 968-69 (9th Cir. 2004).[7] The parties agree that California law applies.

**[11]** California courts have long accepted that, in a general sense, "the practice of law . . . includes legal advice and counsel and the preparation of legal instruments and contracts." *Baron v. City of L.A.*, 469 P.2d 353, 357 (Cal. 1970) (noting that this definition was adopted as early as 1922). But they have recognized too that "ascertaining whether a particular activity falls within this general definition may be a formidable endeavor." *Id.* at 358; *see People v. Landlords Prof'l Servs.,* 215 Cal. App. 3d 1599, 1605 (1989) (observing that "whether any given activity is an unauthorized practice of law depends upon the context and situation involved").

---

[7]As in *Taub*, when the present case was decided by the bankruptcy court, § 110 did not specifically prohibit the unauthorized practice of law. It stated only, "Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." 11 U.S.C. § 110(k) (2002). In 2005, § 110 was amended to bar bankruptcy petition preparers from providing legal advice. 11 U.S.C. § 110(e)(2).

Determining whether particular assistance rendered in the preparation of legal forms constitutes the unauthorized practice is often especially challenging. *Cf. Landlords Prof'l Servs.,* 215 Cal. App. 3d at 1605-09 (observing, after reviewing prior cases, that merely clerical preparation services do not constitute the practice of law, and that impersonal instruction on form completion—such as may appear in a detailed manual—may also be permissible).

Several features of Frankfort's business, taken together, lead us to conclude that it engaged in the unauthorized practice of law. To begin, Frankfort held itself out as offering legal expertise. Its websites offered customers extensive advice on how to take advantage of so-called loopholes in the bankruptcy code,[8] promised services comparable to those of a "top-notch bankruptcy lawyer," and described its software as "an expert system" that would do more than function as a "customized word processor[ ]."

The software did, indeed, go far beyond providing clerical services. It determined where (particularly, in which schedule) to place information provided by the debtor, selected exemptions for the debtor and supplied relevant legal citations. Providing such personalized guidance has been held to constitute the practice of law. *See, e.g.*, *Kaitangian*, 218 B.R. at 110 ("[A]dvising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons."); *In re Anderson*, 79 B.R. 482, 484-85 (Bankr. S.D. Cal. 1987) (finding that a non-lawyer had rendered legal services when he advised customer as to the consequences of filing for bankruptcy, solicited information from her and prepared the bank-

---

[8]Frankfort's Bankruptcy Vault claimed to show customers how to structure bankruptcy "so that it is . . . invisible to Experian, Trans Union, and Equifax, etc.", to "reestablish good credit in 3 months instead of 3 years," and other such feats.

ruptcy forms, and selected her exemptions); *see also Hastings v. U.S. Trustee* (*In re Agyekum*), 225 B.R. 695, 701 (9th Cir. BAP 1998) (noting that bankruptcy petition preparers are prohibited from advising debtors as to the selection of exemptions under the Bankruptcy Petition Preparer Guidelines for the Northern District of California); *People v. Sipper*, 142 P.2d 960, 962 (Cal. App. Dep't Super. Ct. 1943) (holding that the "clerical service" of filling out forms is not the practice of law, but that a defendant who goes further and makes determinations about the type of document appropriate engages in legal practice), *disapproved on other grounds by Murguia v. Mun. Court*, 540 P.2d 44 (Cal. 1975).

**[12]** Frankfort's system touted its offering of legal advice and projected an aura of expertise concerning bankruptcy petitions; and, in that context, it offered personalized—albeit automated—counsel. *Cf. Landlords Prof'l Servs.*, 215 Cal. App. 3d at 1609. We find that because this was the conduct of a non-attorney, it constituted the unauthorized practice of law.[9]

The judgment of the Bankruptcy Appellate Panel of the Ninth Circuit is **AFFIRMED**.

---

[9]Since we are asked only to consider the facts of the case presented (i.e., Frankfort's system), we express no view as to whether software alone, or other types of programs, would constitute the practice of law.