No. 85-36

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

HOMER R. PULSE, JR., and MARGARET B.
PULSE, husband & wife,

        Plaintiffs and Appellants,

    -vs-

NORTH AMERICAN LAND TITLE COMPANY
OF MONTANA, a corporation, and FIRST
SECURITY BANK OF GLENDIVE, a Montana
Banking corporation,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        R. W. Heineman, Wibaux, Montana

    For Respondent:

        Gerald J. Navratil, Glendive, Montana

---

        Submitted on Briefs: Aug. 15, 1985

        Decided: October 15, 1985

Filed: OCT 15 1985

_Ethel M. Harrison_
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Homer and Margaret Pulse appeal a final order of the District Court reforming a mortgage executed by Paul J. Hanson in favor of the Pulses so as to give priority to a Deed of Trust, executed contemporaneously with the mortgage, by Hanson in favor of defendant, First Security Bank of Glendive. We affirm.

Appellants raise four issues for our consideration: First, whether the trial court erred in determining that both the Deed of Trust in favor of the Bank and the mortgage in favor of the Pulses were purchase money mortgages and that the priority between them was to be determined by the intentions of the parties?

Second, whether there was clear, convincing, and satisfactory evidence to support the trial court's determination that the mortgage document from Hanson to the Pulses required reformation insofar as the terms "no exceptions" in that mortgage represented a mutual mistake inconsistent with the intention of the parties to the purchase and sale of the premises?

Third, whether the preparation of the Purchase Agreement and mortgage by the Bank constituted the unauthorized practice of law?

Fourth, whether the Bank owed the Pulses a fiduciary duty, and if so, did the Bank breach that duty?

In 1966, Homer Pulse purchased commercial real property located in Glendive, Montana, known as the Sunshine Market. In 1981, Pulse decided to sell the Sunshine Market, as the market for the sale of commercial real estate was good.

Pulse was contacted by Paul Hanson regarding the sale of the property. Hanson agreed to purchase the Sunshine Market, provided he could obtain financing. Thereafter, Pulse and Hanson met at the First Security Bank of Glendive and discussed the proposed purchase and sale with Genevieve Remillard, the Senior Vice-President of the Bank.

The Bank agreed to finance Hanson's purchase of the real estate and to prepare the necessary documents as "a service" to its customers. On September 9, 1981, the Pulses entered into a Purchase Agreement with Hanson. The Purchase Agreement, as prepared by the Bank, provided that the significant terms of the sale were to be as follows:

(a) Purchase price of sixty-nine thousand dollars ($69,000.00);

(b) HANSON to make a downpayment to PULSES sufficient to pay off an existing mortgage in the amount of $13,400.00 and, in addition, to provide PULSES a cash sum in the amount of $20,000.00;

(c) PULSES to carry the balance of the sale price by way of a second mortgage.

The Bank financed the purchase by lending to Hanson $33,400.00, an amount sufficient to satisfy the existing mortgage on the premises and to provide the Pulses with the additional $20,000.00 cash. As security for the loan to Hanson, Hanson was to execute a Deed of Trust to the premises in favor of the Bank. Testimony at the trial indicated that both the Pulses and Hanson advised the Bank that the Pulses were to receive a second mortgage from Hanson.

On September 23, 1981, Hanson simultaneously executed a mortgage in favor of the Pulses and a Deed of Trust in favor of the Bank. The Deed of Trust was filed on September 24, 1981, at 2:25 p.m., and the mortgage was filed on September 25, 1981, at 10:57 a.m. Both of these documents were drafted

by an employee of the Bank. Neither of the mortgage documents bore any heading to the effect that either was a first or second mortgage. However, the mortgage from Hanson to the Pulses bore the notation "no exceptions" following the form language reading "free from all encumbrances excepting."

At the trial, the Bank offered testimony that the inclusion of the terms "no exceptions" in the Pulses' mortgage was merely a typing error.

Hanson made regular payments to the Bank for six months, commencing November 16, 1981, and terminating on April 15, 1982. The Bank notified the Pulses that the Bank was prepared to foreclose its Deed of Trust due to Hanson's default. Thereafter, the Pulses agreed to accept the premises subject to the Bank's Deed of Trust. On July 26, 1982, Hanson executed a Quit Claim Deed of the premises to the Bank in lieu of foreclosure. On August 4, 1982, pursuant to its agreement with the Pulses, the Bank executed a Warranty Deed of the premises to the Pulses, which included the typed notation that "This deed was given subject to a Deed of Trust given to First Security Bank of Glendive . . . which Deed of Trust the party of the second part assumes and agrees to pay." In connection with the receipt of the Warranty Deed, the Pulses borrowed $1,254.98 from the Bank to bring the Deed of Trust current. Subsequently, the Pulses made regular payments to the Bank of $515.48 per month, consistent with the terms of the Deed of Trust, for 9 months, until May 16, 1983, at which time they ceased all payments.

On May 24, 1983, the Pulses filed an action for a declaratory ruling that their purchase money mortgage received from Hanson was prior in time and right to the Bank's Deed of Trust. After a trial without a jury, the

- 4 -

trial court ordered that the Pulses' mortgage from Hanson should be revised so as to delete the terms "no exceptions." Further, the trial court ordered that the Bank's Deed of Trust was prior in time and right to the Pulses' mortgage and that the Pulses were liable to the Bank for the balance owing on the Deed of Trust.

Appellants first contend that the Deed of Trust executed by Hanson in favor of the Bank is not a purchase money mortgage and not equal in priority to the mortgage executed by Hanson in favor of appellants. A purchase money mortgage is a mortgage on land executed to secure the purchase money by a purchaser of the land contemporaneously with the acquisition of the legal title thereto or afterward, but as part of the same transaction. According to section 71-3-114, MCA:

> Priority of purchase money mortgage. Except as otherwise provided by law, a mortgage given for the price of real property at the time of its conveyance has priority over all other liens created against the purchaser, subject to the operation of the recording laws.

The Deed of Trust was executed by Hanson in favor of First Security Bank to secure the loan enabling Hanson to purchase the Sunshine Market. We agree with the trial court that this Deed of Trust is a purchase money mortgage. Since both the Deed of Trust and the mortgage are purchase money mortgages, we face the problem of determining priority between them.

Testimony indicates that the Pulses agreed to accept a second mortgage to secure the unpaid balance of the purchase price. The Bank relied on this agreement and loaned Hanson the purchase money with the expectation they would have a first mortgage. Once the Bank determined to foreclose their

mortgage, appellants pursued a course of conduct which supported the Bank's position as first mortgagee by accepting the property subject to the Bank's Deed of Trust and making payments on that property for 9 months. For these reasons we hold that the Bank's Deed of Trust is prior to the Pulses' mortgage.

The second issue raised by appellants is whether there is clear, convincing, and satisfactory evidence to support the trial court's determination that the mortgage document from Hanson to the Pulses required reformation insofar as the terms "no exceptions" in that mortgage represented a mutual mistake inconsistent with the intentions of the parties to the purchase and sale of the premises.

According to section 28-2-1611, MCA:

> When written contract may be revised by court. When, through fraud or a mutual mistake of the parties or a mistake of one party while the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

In reforming the appellants' mortgage, the trial court found there was a mistake in the mortgage and it therefore did not reflect the intentions of the parties. We agree.

A mistake of fact is defined as, "a mistake not caused by the neglect of a legal duty . . .." Section 28-2-409, MCA. In determining whether the Bank made a mistake of the kind justifying reformation, the threshold question is whether the Bank neglected a legal duty. There is no doubt the Bank was negligent in its preparation of the appellants' mortgage. But in Montana, mere negligence may not be a bar to reformation of a contract. Instead, the negligence must

amount to "the neglect of a legal duty." As we stated in Parchen v. Chessman (1914), 49 Mont. 326, 142 P. 631, 635:

> The term "mistake" involves the conception that he to whom the fault expressed by it is imputed has been guilty of some degree of negligence which may or may not be excusable when viewed in the light of the circumstances of the particular case. Courts of equity are not bound by cast-iron rules.

Here, the negligence of the Bank did not amount to the neglect of a legal duty. The Bank prepared the instruments as a service to and at the request of the appellants and Hanson. The Bank routinely typed first mortgages in which the terms "no exceptions" were necessary. The insertion of those terms in appellants' mortgage was a typographical error by one of the Bank's secretaries. This mistake, while negligent, does not amount to the neglect of a legal duty which would preclude reformation.

The mistake was mutual because the mortgage as written does not reflect the mutual intentions of the parties. Testimony indicated that the Bank would never accept a second mortgage in a situation such as this, and that appellants agreed to accept a second mortgage to secure the unpaid balance of the purchase price. The Purchase Agreement reflects this agreement. When faced with the Bank's threat to foreclose their mortgage, appellants did not assert that theirs was the first mortgage, but instead accepted the property back subject to the Bank's Deed of Trust. Appellants brought the Deed of Trust current and made payments on the Deed for 9 months. Testimony and the parties' actions indicate that the parties intended the Bank to receive a first mortgage, and appellants a second mortgage.

According to section 28-3-304, MCA:

> When writing disregarded. When through fraud, mistake, or accident a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing disregarded.

Under the circumstances of this case, and under the relevant law, the trial court was justified in finding the terms "no exceptions" were in the mortgage because of mistake, that the mortgage as written did not reflect the mutual intentions of the parties, and that the mortgage should be reformed by deleting the terms "no exceptions."

The third issue appellants raise is whether the preparation by the Bank of the Purchase Agreement, Mortgage, and Deed of Trust in connection with the transaction constituted the unauthorized practice of law. This issue is one of first impression in Montana, but has been addressed by a number of other jurisdictions. What constitutes the practice of law is not easily defined. In Cowern v. Nelson (Minn. 1940), 290 N.W. 795, 797, the Minnesota Court stated:

> The line between what is and what is not the practice of law cannot be drawn with precision. Lawyers should be the first to recognize that between the two there is a region wherein much of what lawyers do every day in their practice may also be done by others without wrongful invasion of the lawyer's field.

While there is a sizeable minority of cases which hold that the drafting or filling in of blanks in printed forms of instruments dealing with land may not constitute the unauthorized practice of law, the majority of cases take the contrary view. We agree with the majority.

In the North Dakota case of Cain v. Merchant National Bank and Trust Co. (N.D. 1936), 268 N.W. 719, a suit was brought against a bank and trust company seeking to enjoin the bank from preparing quitclaim deeds, warranty deeds, real

estate mortgages, and the like. In dismissing the suit, the Court stated that:

> A person who is not a member of the bar may draw instruments such as simple deeds, mortgages, promissory notes, and bills of sale when these instruments are incident to transactions in which such person is interested, provided no charge is made therefor.

Cain, 268 N.W. at 723.

The factors which we find are most important in resolving this question are three-fold:

First, the real estate instruments must be prepared only incident to transactions in which the maker is interested;

Second, the instruments must be prepared without a separate charge; and

Third, the preparation must not go beyond the filling in of blank forms.

In the case at bar, the Purchase Agreement, Mortgage, and Deed of Trust were prepared as "a service" for the appellants, at either appellants' or Hanson's request, and at no charge to either. The instruments were prepared incident to the financing of Hanson's purchase of the Sunshine Market in which the Bank was an interested party. Finally, the Bank did not draft the Purchase Agreement, Mortgage, and Deed of Trust, their preparation consisted of filling in blanks on preprinted forms.

We hold that where, as here, a party merely fills in blanks on preprinted forms such as simple deeds, mortgages, and notes, without separate charge, and incident to real estate transactions in which the party is involved, this does not constitute the unauthorized practice of law.

Next, appellants argue in favor of the existence of a fiduciary relationship between themselves and the Bank,

through the Bank's employee, Remillard. In support, they cite our recent decision in Deist v. Wacholz (Mont. 1984), 678 P.2d 188, 41 St.Rep. 286, in which we found that a fiduciary relationship existed between Deist and her bank.

We stated in Deist:

"As a general rule, the relationship between a bank and a depositor or customer does not ordinarily impose a fiduciary duty of disclosure upon the bank. They deal at arms length. [Citations omitted] However, 'special circumstances' may dictate otherwise . . .." (Quoting Tokarz v. Frontier Federal Savings & Loan Association (Wash. 1983), 656 P.2d 1089, 1092.)

In the Deist case, we found there to be:

[S]ubstantial, credible evidence . . . that the relationship between the Conrad National Bank and Joan Deist was more than than a simple debtor-creditor affair. Joan and her husband had dealt with the bank for about twenty-four years prior to his death. Both she and Russell had imposed trust and confidence in the advice of Eugene Gillette, who as an officer. was the alter-ego of the enterprise and, for all practical purposes, was the "bank" to Joan and other customers [Citations omitted.] Gillette acted as financial advisor to Joan after Russell's death with respect the ranch debt. Even though Joan's association with the Bank in this transaction did not extend over several years, the nature of the association and her reliance, combined with her husband's years of dealing with the bank on essentially the same matters, were sufficient to make out a prima facie case that a fiduciary relationship existed.

Deist, 678 P.2d at 193, 194.

However, in the case at bar, the special circumstances we found in Deist are not present. Neither the Bank nor its employees located a buyer for appellants as was the case in Deist. Instead Hanson approached the Pulses. Unlike Deist where a bank employee was an unnamed purchaser of Deist's ranch, First Security Bank was not a party to the transaction beyond their role as Hanson's lender. There is persuasive testimony that the terms of the sale were formulated by Hanson and appellants and were not a product of the Bank's

- 10 -

advice. In addition, although the Pulses had accounts with the Bank since 1947, they did not use that Bank exclusively, having accounts and certificates of deposit in other banks as well. Finally, the Pulses dealt with the loan department on only a few occasions prior to this transaction; once to finance the purchase of their residence, once to finance the purchase of the Sunshine Market, and a few small loans insured by the Small Business Administration. We do not believe that appellants' dealings with First Security Bank are of the exclusive repeated nature necessary to justify finding a fiduciary relationship.

As an appellate court our duty is not to retry the case, but to determine if the trial court's determination is supported by substantial credible evidence. Conflicts in the evidence are to be resolved by the trial judge and will not be disturbed absent a clear preponderance of the evidence against such findings. Here, there is substantial credible evidence to support the findings of the trial court and we will not disturb those findings on appeal.

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices