**In re Debra Agnes RANKIN, Debtor.**

**United States Trustee, Plaintiff,**

v.

**Susan Lamoyne Costello, Defendant.**

**Bankruptcy No. 04–61399–7.**
**Adversary No. 04/00077.**

United States Bankruptcy Court,
D. Montana.

Jan. 14, 2005.

Debra Agnes Rankin, Lewistown, MT, pro se.

Neal G. Jensen, United States Trustee's Office, Great Falls, MT, for Plaintiff.

### MEMORANDUM OF DECISION

RALPH B. KIRSCHER, Bankruptcy Judge.

In this adversary proceeding initiated by the Office of U.S. Trustee seeking fines, injunctive relief, disallowance and turnover of fees paid by the Debtor to the Defendant Susan Lamoyne Costello ("Costello") for numerous violations of 11 U.S.C. § 110 governing bankruptcy petition preparers ("BPP"), and unauthorized practice of law, the U.S. Trustee filed a motion for summary judgment on October 17, 2004, together with a Statement of Uncontroverted Facts, supporting Memorandum of Law, and attachments including a Declaration of Assistant U.S. Trustee Neal G. Jensen ("Jensen"), and three (3) exhibits consisting of transcripts of meetings of creditors conducted pursuant to 11 U.S.C. § 341(a) in the above captioned Chapter 7 case and in two (2) other Chapter 7 cases, *In re Walter Allen Metcalf ("Metcalf")*, Case No. 04–61042–7 and *In re Debra Jo Lemond ("Lemond")* Case No. 04–60656–7. Costello, *in propria persona*, filed a response in opposition to summary judgment and request for hearing, stating that she is a BPP but contending (1) that requiring her to disclose her social security number on the bankruptcy petition unjustly discriminates against her and denies her equal protection; (2) that she is entitled to reasonable compensation for secretarial-type services; and (3) that she did not give the Debtor legal advice or engage in fraudulent, unfair and deceptive acts. Costello failed to file a separate "Statement of Genuine Issues" as required by Mont. LBR 7056–1(a)(2), setting forth specific facts which she asserts establish genuine issues of material fact and preclude summary judgment.

Trial of this cause was set for November 18, 2004, along with a hearing on the U.S. Trustee's motion for summary judgment. Trial was continued by Order entered November 8, 2004, but the hearing on the U.S. Trustee's motion went forward and was held after notice on November 18, 2004. No appearance was made by the

parties, and the Court took the matter under advisement.

This Court has jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1). The U.S. Trustee's action against Costello is a core proceeding under § 157(b)(2)(A). *See Frankfort Digital Services, Ltd., et al. v. Neary (In re Reynoso)*, 315 B.R. 544, 549 (9th Cir. BAP 2004); *see also Ostrovsky v. Monroe (In re Ellingson)*, 230 B.R. 426, 428, 17 Mont. B.R. 361, 362 (Bankr. D.Mont.1999). At issue is whether Costello violated § 110 by failing to include her address and complete social security number on Rankin's and Metcalf's bankruptcy petitions, failing to file disclosures of fees, and by collecting and paying Lemond's filing fee, and whether Costello engaged in the unauthorized practice of law subject to fines, injunction and other sanctions under § 110 when she prepared the petitions, schedules and statements in the 3 cases. After review of the record, the U.S. Trustee's motion, Statement of Uncontroverted Facts, Jensen's Declaration and attached § 341(a) meeting transcripts, for the reasons set forth below the U.S. Trustee's motion for summary judgment will be granted. This Memorandum includes the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052.

## FACTS

The following facts are derived from the U.S. Trustee's Statement of Uncontroverted Facts and Jensen's Declaration filed with the motion for summary judgment, and the Debtors' pleadings in the above-listed three Chapter 7 cases. Debtor Debra Agnes Rankin ("Rankin"), *in propria persona*, filed her voluntary Chapter 7 petition in Case No. 04–61399–7 on May 10, 2004. No attorney's name is on the petition, but Costello signed the petition as a non-attorney petition preparer, dated May 5, 2004, listing her business name as "Sherco". Above the line marked "Social Security Number" Costello placed only the last four (4) digits of her social security number: " * * * *-* *–7127". She did not include her address on the petition, instead stating "See Bankruptcy Petition Preparer Information". However, no separate document entitled "Bankruptcy Petition Preparer Information" is filed in Rankin's case, nor in Metcalf's or in Lemond's Chapter 7 cases. On Rankin's Statement of Financial Affairs Costello's name and address are listed at paragraph 9, "Payments related to debt counseling or bankruptcy"[1]. On Rankin's Statement of Intention, Costello again listed the last 4 digits of her social security number and signed it, without including her address but again referring to the nonexistent "Bankruptcy Petition Preparer Information".

In Metcalf's Case No. 04–61042–7, Costello signed the Debtor's petition as she did in Rankin's case, listing only the last 4 digits of her social security number and without her address, instead writing "See Attached Bankruptcy Petition Preparer Information". As in Rankin's case, Costello's name and address are listed at paragraph 9 of the Statement of Financial Affairs, where it states she received $250 from Metcalf, $150 for typing and $100 for "Misc. Services". On Metcalf's Statement of Intention and "Certification of Non–Attorney Bankruptcy Petition Preparer", Rankin listed the last 4 digits of her social security number and, unlike in Rankin's case, listed her address. In Lemond's Case No. 04–60656–7, Rankin listed her full social security number, address and

---

1. Paragraph 9 states Sherco's and Costello's address as: "PO Box 73, Moore, MT 59464". It states Costello was paid on 5/3/2004 $150.00 for "Typing Fee" and $100.00 for "Misc. Services".

telephone number on the petition. Paragraph 9 of Lemond's Statement of Financial Affairs states Costello received $150 for typing fee and $100 for "Misc. Services". In none of the above-described three Chapter 7 cases did Costello file a separate declaration under penalty of perjury disclosing the fees she received from or on behalf of the debtors within 12 months immediately prior to the filing of the cases.

Costello is not an attorney licensed to practice law in any state, but she assisted Rankin, Metcalf and Lemond in preparing their petitions, schedules and statements, and as shown by the § 341 transcripts attached to Jensen's declaration. Costello also assisted Rankin in preparing and filing the reaffirmation agreement with Chase Manhattan Mortgage Corp. ("Chase") on July 6, 2004, which was approved after hearing.

Gary S. Deschenes ("Deschenes") was appointed Trustee in all three Chapter 7 cases. The § 341(a) meeting of creditors was held in Rankin's case on June 9, 2004. Deschenes and Jensen both examined Rankin at the § 341(a) meeting. At the § 341 meeting the following questions were asked of and answered by Rankin:

Q. (by Deschenes): Who provided you with assistance in filing this bankruptcy?

A. Susan Costello, Serco (phonetic) Company.

\* \* \* \* \* \*

Q. When you went to see Susan, was it in person or over the phone?

A. In person.

Q. And did she explain to you how a bankruptcy works?

A. Yes, she did.

Q. And did she explain to you about exemptions, those things that were protected in bankruptcy?

A. Yes.

Q. And did she explain to you regarding debts that would be discharged?

A. Yes.

Q. She has on here: Typing fee, $150; and miscellaneous services, $100. What's the miscellaneous services?

A. I handed her a stack of all my bills, and everything, and my credit report, and she consolidated everything and did all my paperwork because she had the training to do so.

Q. And you paid her for those?

A. I did.

Ex. 1 to Jensen's Declaration, pp. 3–4.

Later in response to questions by Jensen, Rankin testified:

Q. (By Jensen): How did you find Susan Costello?

A. She had an ad in the paper from Lewistown.

Q. The Lewistown paper?

A. Hm-hmm.

\* \* \* \* \* \*

Q. You didn't meet her in Moore?

A. No. She came to my home.

Q. Okay. How many times did you meet with her?

A. Two or three—probably three times.

Q. Okay. How did the—can you explain what happened during the first meeting?

A. She had—we set up a time frame. She asked me to consolidate all my bills, and everything, and we did that. And she went through the initial paperwork and wrote down answers. I gave her a copy of all my bills. And then she took everything home, prepared it, brought it back and then reviewed it, and then we signed it, and then we made the copies and sent them.

Q. Okay. When you paid her $250, did that include the filing fee, the bankruptcy filing fee?

A. No, that was separate. And I have a receipt for that.

Q. Did you pay that directly to the Court, or did you pay it through her?

A. No, I paid it directly to the Bankruptcy Court in Butte.

Q. Okay. Did she tell you the different types of chapters you could file under: Chapter 7, Chapter 13?

A. Yes.

Q. And what did she tell you about those two chapters, the differences, and which would be better for you?

A. I don't remember exactly all the differences, but I do remember that with all my obligations, and everything, that the Chapter 7 would have been the better one for me to do.

Q. Did she explain to you, though, the difference between the two?

A. Yeah, she did.

Q. Because you didn't know prior to talking to her which would be beneficial to you?

A. No, I didn't.

Q. Okay. So she essentially advised you that Chapter 7—

A. Yes.

Q. —was the best; is that right? You have to answer "yes" for the—

A. Yes.

Q. Okay. And did you know where to schedule your various debts—like secured, unsecured, priority—without her assistance?

A. No, I did not.

Q. Okay. And she essentially took all of your bills and put them in the right categories in the forms?

A. Correct.

Q. Okay. And did she explain to you which types of assets could be claimed as exempt in Montana?

A. I'm sure she did.

Q. You didn't know that independently?

A. No.

Q. Okay. Did she explain to you which statutes you could use to claim property as exempt, which Montana statutes? Did she explain that to you?

A. I don't recall.

Q. You didn't know that independently?

A. No.

Q. Ma'am, in your bankruptcy schedules. There's a Schedule C on which you claim your property as exempt. There are a number of—these are Montana statutes: 25–13–609. Do you recognize any of those, or did—

A. No, I don't.

Q. So your bankruptcy petition preparer chose those statutes and put those in there for you; is that correct?

A. Yes.

Q. And where it says (quoted as read): "Are you claiming under 522(b)(1) or 522(b)(2)?" you checked 522(b)(2). Is that again a reference—or a decision that was made on your behalf by Mrs. Costello?

A. I believe so.

Q. Because you wouldn't have had any independent knowledge of that?

A. Right.

Q. Okay. And the value claimed exempt, she has values of the properties claimed as exempt. Would you have known which values to claim as exempt without her help?

A. No, I would not have.

Q. In fact, you wouldn't have known what property to even list on Schedule C, is that accurate—

A. Right.

Q. —without her help? On this page of your schedules, it asks which properties you want to surrender, reaffirm, redeem, retain. And on the house, it says you claim you wish to reaffirm that. Do you know what "reaffirm" means?

A. Yes, I did.

Q. Did she, Mrs. Costello, explain that to you?

A. Yes.

Q. Okay. You didn't know ahead of time what redemption—what reaffirmation was?

A. I knew that there was a way that I could keep the house, but I didn't know the terminology on it.

Q. Okay. And Mrs. Costello helped you with that?

A. Yes.

Q. Has she prepared a reaffirmation agreement for you to sign with the Chase Manhattan mortgage?

A. Yes. That's all in the mail at this time.

Q. She prepared that for you?

A. Yeah. And we sent the papers, and then they sent one back, and then we are in the process of sending the other one back—

Q. Okay.

A. —the signed one.

Q. And she told you—did Mrs. Costello tell you that you could just simply retain the Buick Skylark?

A. She explained the differences between retain and reaffirm, and I chose to retain my loan with the credit union.

\* \* \* \* \* \*

Q. When was the last time you met with Mrs. Costello?

A. Last week. She helped me with the papers that I had to send back to Chase Manhattan.

Q. The reaffirmation agreement?

A. Yes.

Q. And do I understand that she did prepare that document?

A. Yes.

Q. Okay. Did she sign that document, do you know?

A. I'm not sure.

Q. Okay. You show that you paid her on May 3 $150 for typing services and $100 for miscellaneous services. Again, I guess I'm confused about the distinction between the two. What's the difference between the miscellaneous services and the typing fee?

A. The miscellaneous, I'm gathering, would be her sorting through all my records, and everything, and putting them where they needed to go. She just said that her services were $250 and that's how she broke them down.

Q. Okay. So she actually determined where to put what bills in your bankruptcy schedules?

A. She went through them with me, yes.

Ex. 1 to Jensen's Declaration, pp. 9–15.

Metcalf's § 341 meeting transcript is Ex. 2 to Jensen's Declaration. It states that Costello did not discuss the differences between various chapters of the Bankruptcy Code with Metcalf, who paid her $250, but that she did tell Metcalf that "Chapter 7 would be the way to go", explained which statutes were to be used to claim exemptions, and prepared Metcalf's Schedules for him. Ex. 2 to Jensen's Declaration, pp. 3, 6–10. Costello also obtained a value for Metcalf's truck off the internet and told him to surrender it. Ex. 2 to Jensen's Declaration, p. 10.

At Lemond's § 341(a) meeting the Debtor testified that Costello explained what a bankruptcy does and does not do, prepared her bankruptcy from worksheets provided by Costello, and talked about exemptions Lemond had. Ex. 3 to Jensen's Declaration, pp. 3, 7–8. Costello also received Lemond's $209 filing fee and sent it to the Clerk with her petition, schedules and statements. Ex. 3 to Jensen's Declaration, p. 12. Lemond testified that Costello explained to her the differences between Chapter 7 and Chapter 13, explained exempt assets and the meaning of documents, and classified one unsecured claim as a priority claim. Ex. 3 to Jensen's Declaration, pp. 9–11, 14.

All three cases were no asset cases, and discharges were entered in each case. Lemond's case was closed on June 25, 2004, and Metcalf's case was closed on July 12, 2004. Rankin's case remains open. The U.S. Trustee filed the complaint in this adversary proceeding on June 28, 2004.

## DISCUSSION

### I. Contentions of the Parties.

The U.S. Trustee seeks fines, injunctive relief, disgorgement of fees paid by the above three Debtors to Costello for numerous violations of § 110, including failure to print her social security number and address on the petitions in Rankin's and Metcalf's cases, failure to file a declaration of fees in all three cases, and for receiving payment of the filing fee from Lemond, each of which violation subjects Costello to a fine of not more than $500 under the applicable subsection of § 110. The U.S. Trustee seeks disgorgement of all fees paid to Costello in these 3 cases, and requests that the Court order Costello to provide a verified list of all other debtors for whom she has rendered services and the amounts she charged each. The U.S. Trustee further seeks an injunction bar-

ring Costello from acting as a BPP in the future. Finally, the U.S. Trustee requests the Court certify the facts to the district court for further proceedings.

Costello contends that requiring her to disclose her social security number on the bankruptcy petition unjustly discriminates against her and denies her equal protection, that she is entitled to reasonable compensation for secretarial-type services, and that she did not give Rankin legal advice or engage in fraudulent, unfair and deceptive acts.

### II. Summary Judgment.

Summary judgment is governed by F.R.B.P. 7056. Rule 7056, incorporating Rule 56(c), Fed.R.Civ.P., states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *In re Younie*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (*quoting In re Aquaslide "N" Dive Corp.*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute." *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir.1985). That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the

facts set forth therein must be admissible in evidence. *Aquaslide,* 85 B.R. at 547.

The moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.1986), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Electrical Service,* 809 F.2d at 630 (citing *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *Id.; Liberty Lobby,* 106 S.Ct. at 2510, 106 S.Ct. 2505.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *T.W. Electrical Service,* 809 F.2d at 630; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *T.W. Electrical Service,* 809 F.2d at 631.

"A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar,* 247 F.3d 986, 997 (9th Cir.2001). Instead, the nonmoving party must demonstrate the existence of "specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Without that showing, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Applying the above standards for summary judgment, pursuant to Mont. LBR 7056–1(a)(3) all material facts in the moving party's Statement of Uncontroverted Facts are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party. With Costello having failed to file a Statement of Genuine Issues, or supporting affidavits, all material facts in the U.S. Trustee's Statement of Uncontroverted Facts, Jensen's Declaration and § 341(a) transcripts are deemed admitted, and the inquiry shifts to whether the U.S. Trustee as moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552–53.

## III. Section 110.

Section 110 of Title 11 was enacted as part of the Bankruptcy Reform Act of 1994, and provides penalties for a person other than an attorney or employee of an attorney who negligently or fraudulently prepare bankruptcy petitions. *Ellingson,* 230 B.R. at 432, 17 Mont. B.R. at 371; *In re Farner,* 17 Mont. B.R. 48, 50 (Bankr. D.Mont.1998); *In re Stacy,* 193 B.R. 31, 35

(Bankr.D.Or.1996). The House Report explains the rationale behind § 110 as follows:

> Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advise and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

H.R. Rep. 103–384, 103rd Cong., 2nd Sess. at 40–41 (Oct. 4, 1994); *Ellingson,* 230 B.R. at 432, 17 Mont. B.R. at 371; *In re Farner,* 17 Mont. B.R. at 50.

No dispute exists that Costello is a BPP. The U.S. Trustee moves for fines, disgorgement of fees, and an injunction and certification of facts to the district court based upon numerous subsections of § 110, including §§ 110(b), (c), (g), (h), (i) and (j), which provide as follows:

> (b)(1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address. (2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

> (c)(1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document. (2) For purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.. (3) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

> \* \* \* \* \* \*

> (g)(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.

> (2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

> (h)(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.

> (2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered under section 522(b).

> (3) The debtor, the trustee, a creditor, or the United States trustee may file a motion for an order under paragraph (2).

> (4) A bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.

> (i)(1) If a bankruptcy case or related proceeding is dismissed because of the failure to file bankruptcy papers, includ-

ing papers specified in section 521(1) of this title, the negligence or intentional disregard of this title or the Federal Rules of Bankruptcy Procedure by a bankruptcy petition preparer, or if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor—

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

(j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)(A) In an action under paragraph (1), if the court finds that—

(i) a bankruptcy petition preparer has—

(I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

(3) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorney's fees and costs of the action, to be paid by the bankruptcy petition preparer.

### 1. § 110(b)—Failure to Print Address.

█ Section 110(b) requires a BPP who prepares a document for filing to sign the document and print on it the BPP's name and address, subject to a fine of not more than $500 for each violation under subsection (b)(2) for each such failure, unless the failure is due to reasonable cause. On the petitions filed in Rankin's case and Metcalf's case Costello failed to print her address, instead referring to "Bankruptcy

Petition Preparer Information". No such document was filed separately in either case. This Court concludes that Costello violated the requirement to print her address on Rankin's case and Metcalf's petitions, and she is subject to a fine of not more than $500 for both violations.

The language of § 110(b)(1) requiring the BPP's address to be printed "on the document" is plain. The Ninth Circuit explained statutory construction as follows in *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir.2002):

> The first and most important step in construing a statute is the statutory language itself. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We look to the text of the statute to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Our inquiry ceases if from the plain meaning of the statute congressional intent is unambiguous, and the statutory scheme is coherent and consistent. *Id.*

■ Courts must presume that a legislature says in a statute what it means and means in a statute what it says there. *Connecticut National Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989); *In re Jore Corp.*, 298 B.R. 703, 731 (Bankr.D.Mont.2003). Since § 110(b)(1) plainly requires a BPP to print his or her address "on the document", it is a violation of § 110(b)(1) subject to a fine of not more than $500 for Costello to fail to print her address on Rankin's and Metcalf's petitions, regardless of whether or not she filed a separate BPP information

statement or printed her address in the Statement of Financial Affairs or elsewhere. The U.S. Trustee is entitled to summary judgment against Costello under § 110(b).

### 2. § 110(c)—Failure to Place Social Security Number.

■ Section 110(c)(1) requires a BPP who prepares a document for filing to place "on the document" an identifying number that identifies the individual who prepared the document. Section 110(c)(2) provides that such identifying number "shall be the Social Security account number of each individual who prepared the document or assisted in its preparation", subject to a fine of not more than $500 for each such failure unless the failure is due to reasonable cause under subsection (c)(3).

The record shows that Costello failed to place her complete Social Security number on Rankin's and Metcalf's petitions. The language of § 110(c) is plain, and the Court concludes that Costello violated § 110(c)(1) when she placed only the last 4 digits of her social security number on Rankin's and Metcalf's petitions. Printing only the last 4 digits of a BPP's social security number is a violation of the plain language of § 110(b). So is failing to place the complete Social Security number on the document while referring the reader to a separate document.

■ Costello argues that requiring her to disclose her entire Social Security number on the bankruptcy petition unjustly discriminates against her and denies her equal protection with debtors who are not required to publish their Social Security number on the internet. Costello cites no case law in support of her equal protection argument, and without more this Court believes that § 110 passes constitutional muster on equal protection grounds for the

simple reason that a BPP is not similarly situated to a debtor, and is not entitled to the same protections granted to debtors under the Bankruptcy Code. The House Report quoted above makes clear that § 101 was intended to protect debtors from BPPs who have proliferated across the country and take unfair advantage of debtors. *Ellingson,* 230 B.R. at 433, 17 Mont. B.R. at 371. If petition preparers seek protection against identity theft or relief from the requirement of § 110(c) on other grounds, they may petition Congress for relief.

The Court notes that Costello's concern about including her Social Security number did not prevent her from printing her complete social security number on the petition in Lemond's case. But in Rankin's and Metcalf's cases, based upon Costello's failure to print her complete social security number on the petitions, the U.S. Trustee is entitled to summary judgment against Costello under § 110(c) for two violations subject to fines under § 110(c)(3).

### 3. Section 110(g)—Receipt and Payment of Filing Fee.

The § 341 transcript in Lemond's case shows that Costello received Lemond's $209 filing fee and sent it to the Clerk with Lemond's petition, schedules and statements. Ex. 3 to Jensen's Declaration, p. 12. Section 110(g) provides that a BPP "shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition". There being no genuine issue of material fact or dispute that Costello received the filing fee from Lemond and sent it in with her petition, schedules and statements, the U.S. Trustee is entitled to summary judgment against Costello under § 110(g) subject to a fine under § 110(g)(2).

### 4. Section 110(h)—Disclosure of Fees.

Section 110(h) requires a BPP to file "a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months" prior to the petition date, and any unpaid fee charged to the debtor. The record above shows that Costello failed to comply with § 110(h)(1) in all three above-discussed bankruptcy cases, because she did not file a separate declaration under penalty of perjury in any of the cases.

The language of § 110(h)(1) is plain. The fact that Costello's fees were disclosed in the Debtors' Statements of Financial Affairs signed by the three individual Debtors is not a "declaration under penalty of perjury" by the BPP. It is not the Court's task to ferret through the Statement of Financial Affairs or elsewhere in the file searching for a BPP's compliance when the plain language of § 110(h)(1) requires a declaration under penalty of perjury. Costello's "Certification of Non–Attorney Bankruptcy Petition Preparer" filed with the Debtors' Statement of Financial Affairs and Statement of Intention is not a declaration under penalty of perjury, and does not disclose Costello's fees.

Based upon Costello's failure to file a separate declaration under penalty of perjury of the fees received from Rankin, Metcalf and Costello, the U.S. Trustee is entitled to summary judgment against Costello under § 110(h). Pursuant to § 110(h)(2) and (3) the Court shall order disgorgement and order immediate turnover to the Trustee all fees received by Costello in Rankin's, Metcalf's, and Lemond's cases based on Costello's violations of § 110(h) and (i), discussed below. The Court finds that Costello's fees exceed the value of services rendered for the documents prepared. In addition, the Court

will grant the Trustee's request and order Costello to provide the U.S. Trustee with a verified list of all other debtors for whom she has rendered services and the amounts she charged each.

### 5. Section 110(i) & (j)—Unauthorized Practice of Law; Injunction.

■ The U.S. Trustee moves for disgorgement of fees, certification to the district court and an injunction barring Costello from acting in any capacity as a BPP in the District of Montana based upon her unauthorized practice of law by soliciting information from the Debtors and translating it into completed bankruptcy forms, advising the Debtors of applicable Chapters under the Bankruptcy Code and available exemptions, choosing forms and classifying creditors, and preparing the reaffirmation agreement in Rankin's case. Costello contends that she did not give Rankin or other Debtors legal advice or engage in fraudulent, unfair and deceptive acts, and that she is entitled to reasonable compensation for secretarial-type services.

The Ninth Circuit Bankruptcy Appellate Panel recently noted that "[b]ankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country." *In re Bankruptcy Petition Preparers Who Are Not Certified Pursuant to Requirements of Arizona Supreme Court*, 307 B.R. 134, 143 (9th Cir. BAP 2004). "While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. H.R.Rep. No. 103–384, at 40–41 (1994); 140 Cong. Rec. H10,770 (1994)." *Id.; see also In re Farness*, 244 B.R. 464, 467 (Bankr.D.Idaho 2000) (a BPP may provide typing services but not legal advice).

The court in *Farness* surveyed cases and noted that advising debtors of available exemptions, determining where property and debts are to be scheduled, summarizing and reformulating information solicited from clients and generating completed bankruptcy forms "require the exercise of legal judgment beyond the capacity and knowledge of lay persons" and constitutes unauthorized practice of law. *Farness*, 244 B.R. at 471 (citing cases).

In *Ellingson*, this Court construed Mont.Code Ann. § 37–61–201 and noted that Montana follows the majority rule that preparation or filling in blanks on preprinted legal forms constitutes the practice of law. *Ellingson*, 230 B.R. at 433, 17 Mont. B.R. at 372, citing *Pulse v. North American Land Title Co.* (1985), 218 Mont. 275, 282, 707 P.2d 1105, 1109 [2]. This Court found that the BPP in *Ellingson* engaged in the unauthorized practice of law by soliciting information from the debtors, advising them of available exemptions, determined where property and debts were to be scheduled, summarized and reformulated information solicited from clients and generated the completed bankruptcy forms on her computer. *Ell-*

---

**2.** In *Pulse* the Montana Supreme Court held that where a party merely fills in blanks on preprinted forms such as simple deeds, mortgages and notes, without separate charge, and incident to real estate transactions in which the party is involved, that does not constitute the unauthorized practice of law. *Pulse v. North American Land Title Co.*, 218 Mont. at 282, 707 P.2d at 1109–10. This exception to the majority rule does not apply to the instant case because: (1) Costello did more than fill in blanks on preprinted forms when she compiled Debtors' financial information and generated bankruptcy documents; (2) she charged each of the three Debtors separately the sum of $250; and (3) the work was not incident to a real estate transaction in which Costello was involved. Thus under *Pulse*, the majority rule would apply to Costello.

*ingson,* 230 B.R. at 433–34, 17 Mont. B.R. at 373. In *Reynoso* the BAP explained: "Solicitation of information which is then translated into completed bankruptcy forms is the unauthorized practice of law, whether by website or otherwise, as is advising a debtor of the availability of particular exemptions or choosing those exemptions." 315 B.R. at 552 (citing cases).

In the instant case the same type of facts are shown in all three bankruptcy cases of Rankin, Metcalf and Lemond by their § 341 testimony transcripts. In each case Costello collected their bills and other information, summarized and reformulated the information and generated the completed bankruptcy forms on her computer. She advised Rankin and Metcalf where to list exempt property on their Schedules and under which statutes to claim exemptions. Costello engaged in the unauthorized practice of law when she advised the Debtors that Chapter 7 was their better choice, exercised her judgment when scheduling a claim as priority, and prepared Rankin's reaffirmation agreement with Chase Manhattan. As under similar facts found in *Ellingson* and *Reynoso,* this Court finds and concludes that Costello engaged in the unauthorized practice of law in all three bankruptcy cases. 230 B.R. at 433–34, 17 Mont. B.R. at 373; *Reynoso,* 315 B.R. at 552; *see also Dye v. Redfern (In re Tucker),* 7 Mont. B.R. 89, 99–100 (Bankr.Mont.1989); *see also In re Kaitangian,* 218 B.R. 102, 108–10 (Bankr. S.D.Cal.1998).

 As this Court noted in *Ellingson:* "The Court may act to prevent such unauthorized practice of law in bankruptcy cases. A litigant has an inalienable right to represent himself, but has no right to demand representation by a nonlawyer. *State v. Barnes,* 232 Mont. 405, 410, 758 P.2d 264, 267 (1988). This Court is not required to permit a debtor to be repre-

sented by a nonlawyer practicing law . . . ." *Ellingson,* 230 B.R. at 434, 17 Mont. B.R. at 373–74. Costello argues that she did not engage in fraudulent, unfair and deceptive acts. In *Reynoso,* however, the BAP held that engaging in the unauthorized practice of law "is fraudulent, unfair, and deceptive conduct. *See In re Bush,* 275 B.R. 69, 83 (Bankr.D.Idaho 2002); *In re Stacy,* 193 B.R. 31, 37 (Bankr.D.Or. 1996)." *Reynoso,* 315 B.R. at 553. The U.S. Trustee is entitled to summary judgment against Costello under § 110(i)(1) for fraudulent, unfair and deceptive acts consisting of her unauthorized practice of law in all 3 cases.

Costello cites *In re Guttierez,* 248 B.R. 287, 297–98 (W.D.Tex.2000), as authority allowing a bankruptcy petition preparer to provide "limited secretarial-type services" for reasonable compensation. *Guttierez* does not help Costello for several reasons. First, the court specified what is allowed under § 110:

So what does § 110 tacitly permit? The answer in a nutshell is "not much." Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting "petition preparers" to rendering only "scrivening/typing" services. Anything else—be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a pro se debtor after the enactment of § 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the

debtor having sought out the petition preparer's service. Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is not permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110.

*Guttierez*, 248 B.R. at 297–98. In other words, as another court explained, "the client should have already handwritten the entire petition, including all schedules, so that [the bankruptcy petition preparer] only need type it." *In re Rose*, 314 B.R. 663, 706–07 (Bankr.E.D.Tenn.2004), citing *Ellingson*. Costello went beyond what *Guttierez* allowed by suggesting Chapter 7 bankruptcy as an available remedy for the Debtors' financial problems, explaining where bills go on the schedules, and explaining exemptions and completing the Schedules. Second, *Guttierez* limited a fee for typing services on a *pro se* debtor's behalf to $50.00. *Guttierez*, 248 B.R. at 298. Costello's typing fee of $150 in each case exceeds that allowed in the case authority she herself cites, and the additional $100 for miscellaneous services exceeds allowable compensation for miscellaneous services which constitute the unauthorized practice of law.

The U.S. Trustee seeks an injunction barring Costello from acting in any capacity as a BPP in the District of Montana. Under § 110(j)(2) injunctive relief is available to suppress the unauthorized practice of law. *Ellingson*, 230 B.R. at 434–35, 17 Mont. B.R. at 375, 377; *Reynoso*, 315 B.R. at 553; *In re Kaitangian*, 218 B.R. at 114–15, 117–18. To permanently enjoin a BPP under § 110(j)(2)(B) the Court must find the BPP continually engaged in the conduct described in § 110(j)(1)(i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of Title 11. *Reynoso*, 315 B.R. at 553; *Ellingson*, 230 B.R. at 435–36, 17 Mont. B.R. at 376–77. Costello denies she is engaged in the unauthorized practice of law, even though her preparation of bankruptcy documents from information solicited from debtors clearly constitutes unauthorized practice of law as discussed above. Her unauthorized practice of law and refusal to comply with the other requirements of § 110 governing disclosure of address, social security numbers, fees paid and mishandling of filing fees, and apparent involvement in more recent cases in this District as a BPP, together constitute a sufficient showing for this Court to conclude that the U.S. Trustee has satisfied her burden of proof under F.R.B.P. 7065 and § 110(j) to show that a permanent injunction against Costello acting as a BPP in this District should be issued at this Court's discretion. *Reynoso*, 315 B.R. at 553–54; *Ellingson*, 230 B.R. at 435–36, 17 Mont. B.R. at 377.

Finally, the U.S. Trustee seeks certification to the district court under § 110(i). The BAP succinctly noted in *Reynoso:* "Certification is mandatory: once the bankruptcy court finds a BPP has engaged in fraudulent, unfair or deceptive conduct, the bankruptcy court must (upon motion) certify that fact to the district court for the imposition of damages." 315 B.R. at 554. This Court reads § 110(i)(1) as providing that the district court, "on motion of the debtor, the trustee, or a creditor and after a hearing, shall order" the BPP to pay damages and other sanctions set forth in that subsection. Based upon the Court's findings above that Costello engaged in the unauthorized practice of law, and such conduct being fraudulent, unfair or deceptive conduct, *Reynoso*, 315 B.R. at 553, certification to the district court is mandatory and shall issue.

In conclusion, the U.S. Trustee has satisfied his burden of proof showing Costello

violated §§ 110(b) and (c) in Rankin's and Metcalf's cases, that she violated § 110(g) in Lemond's case and violated § 110(h) in all three cases—a total of 8 violations, each of which subjects Costello to a fine or disgorgement. The Court does not consider any of Costello's failures under §§ 110(b) or (c) due to reasonable cause, but the Court will impose only half the $2,000 fine, or $1,000, for those violations in the exercise of its discretion [3]. The $500 fine under § 110(g) is not subject to reduction for Costello's handling the filing fee in Lemond's case. In addition, the Court will order disgorgement of the entire $250 fee received by Costello in all three cases for failure to file a declaration under penalty of perjury and exceeding the value of services rendered, or $750; and the Court will order Costello to provide the U.S. Trustee with a verified list of all other debtors for whom she has rendered services and the amounts she charged each. The above fines imposed against Costello and disgorgement of fees for violations of § 110 total $2,250, subject to further proceedings in the district court upon certification and motion filed pursuant to § 110(i)(1). Lastly, Costello will be permanently enjoined from acting as a BPP in the District of Montana.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1).

2. The U.S. Trustee's action is a core proceeding under § 157(b)(2)(A).

3. The U.S. Trustee satisfied its heavy burden of proof under F.R.B.P. 7056 and Fed.R.Civ.P. 56(c) to show that there is no genuine issue as to any material fact and that the U.S. Trustee is entitled to judgment as a matter of law based upon Cos-

tello's unauthorized practice of law and violations of 11 U.S.C. § 110, by soliciting financial information from Debtors Rankin, Metcalf, and Lemond, advising them of available exemptions, and preparing Chapter 7 petitions, Schedules and Statements on their behalf for filing in this District. The petitions filed by Rankin, Metcalf and Lemond failed to include Costello's address and complete social security number as required by § 110. Costello failed to file a declaration under penalty of perjury of her fees received or charged in those cases, and Costello received payment from Lemond of the filing fee for Lemond's case.

4. Costello failed her burden under Mont. LBR 7056–1(c) to file a "Statement of Genuine Issues" setting forth specific facts establishing a genuine issue of material fact precluding summary judgment, and failed her burden to show that the U.S. Trustee is not entitled to summary judgment as a matter of law based upon her unauthorized practice of law and other violations of § 110.

5. Costello should be permanently enjoined under § 110(j)(2) from acting as a bankruptcy petition preparer, from soliciting financial information from debtors and advising them of available relief under the Bankruptcy Code, and from preparing Chapter 7 petitions, Schedules and Statements for filing in this District.

6. Certification to the United States District Court for the District of Montana is mandatory under § 110(i)(1) based upon Costello's unauthorized practice of law which constitutes fraudulent, unfair or deceptive conduct. *In re Reynoso,* 315 B.R. 544, 553 (9th Cir. BAP 2004).

**IT IS ORDERED** Costello's objection filed October 29, 2004, is overruled; the

---

**3.** This acknowledges that Costello's address was listed in the Statement of Financial Af-

fairs.

U.S. Trustee's motion for summary judgment filed October 17, 2004, is granted; and a separate Judgment will be entered against the Defendant in the amount of $2,250.00 for violations of §§ 110(b), (c), (g) and (h), and ordering Costello to disgorge all $750 in fees received from the Debtors in Case Nos. 04–61399–7, Case No. 04–61042–7 and 04–60656–7; Costello will be ordered to provide the U.S. Trustee with a verified list under oath of all other debtors for whom she has rendered services in the District of Montana and the amounts she charged each debtor; and Costello will be permanently enjoined from acting as a bankruptcy petition preparer in this District and engaging in unauthorized practice of law and related activities.

**IT IS FURTHER ORDERED** pursuant to 11 U.S.C. § 110(i) this Court will certify the facts of Costello's fraudulent, unfair, or deceptive acts consisting of the unauthorized practice of law to the United States District Court for the District of Montana for further proceedings by the U.S. Trustee.